# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 17-CV-23749-PAS

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware entity,

       Plaintiff,

v.                                                                    **CLASS ACTION**

ACE AMERICAN INSURANCE
COMPANY, a foreign profit corporation,

       Defendant.

_____/

### PLAINTIFF'S THIRD AMENDED
### CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiff, MSP Recovery Claims, Series LLC, a Delaware entity ("Plaintiff"), on behalf of itself and all others similarly situated, brings this action against Ace American Insurance Company, a foreign profit corporation ("Defendant"), and states as follows:

### NATURE OF THE ACTION

1.      Plaintiff is an entity that obtains claims via assignment for reimbursement from Medicare Advantage Organizations ("MAOs"), first-tier entities, and downstream entities (the "Assignors") that offer or manage Medicare Advantage ("MA") plans for Part C Medicare beneficiaries.

2.      Defendant is an insurance company that provides liability insurance on behalf of its insured.

3.      Under the MSP Act, liability insurance plans, workmen's compensation law or plans, and no-fault insurance are considered primary plans. 42 U.S.C. § 1395y(b)(2). A primary

plan is obligated by law to pay prior to a Medicare Payer or otherwise reimburse a Medicare Payer that has paid for those items and services that were required to be paid by the primary payer by virtue of a contractual obligation or settlement.

4.     When a Medicare beneficiary is injured and enters into a settlement with a liability insurer, Defendant is considered a primary payer by virtue of entering into said settlements.

5.     Defendant is also considered a primary payer because it has a contractual obligation under its no-fault insurance policies to provide coverage for its insureds.  As a primary payer, Defendant is required to pay first for medical items and services that are covered by concurrent Medicare coverage (or an MA plan). Further, anytime Medicare (or an MAO) "makes a payment that a primary plan was responsible for, the payment is merely conditional" by operation of law. *Fanning v. United States*, 346 F.3d 386, 389 (3d Cir. 2003).

6.     **Plaintiff has notified Defendant of instances wherein Defendant,** as a primary payer, failed to provide primary payment or reimburse the Assignors for payments made on behalf of Medicare beneficiaries for medical items and services.

7.     In each instance, a Medicare beneficiary enrolled in an MA plan was injured in an accident wherein (1) Defendant entered into a settlement with the Medicare beneficiary yet failed to reimburse the Assignors beneficiary's medical expenses arising from an accident ("accident-related expenses") or (2) Defendant was obligated to provide primary coverage for the accident-related expenses by virtue of a contractual obligation.

8.     The Assignors made conditional payments on behalf of the injured persons to cover accident-related expenses for each accident.

9.     The Assignors assigned its claims to the Plaintiff that included any claims pursuant to the the MSP Act as well as any State and Federal causes of action. Plaintiff is  currently assignee

and otherwise owns and holds title to these claims.

10.     The Assignors are secondary payers, and Defendant is a primary plan with obligations to reimburse the Assignors for their conditional payments made.

11.     Defendant's responsibility to reimburse Plaintiff and the Assignors is demonstrated by (1) entering into a settlement agreement with the injured Medicare beneficiary and (2) insurance contracts that required Defendant to pay the injured persons' accident-related expenses. These injured Medicare Beneficiaries are the exact beneficiaries for which Plaintiff's assignors had to bear the financial loss of having to absorb the costs of the items and services that should have been paid by the Defendant in this case.  In each of the cases, the Defendant either settled a case and paid a Medicare Beneficiary or had a contractual obligation to cover the items and services that were incurred by the Plaintiff's Assignors.

12.     The class representative in this matter is the Plaintiff – MSP Recovery Claims, Series LLC.

13.     Plaintiff's Assignors, as Medicare secondary payers, have standing under 42 U.S.C. § 1395y(b)(3) to bring this private cause of action to recover double damages from Defendant, as the primary payer, because the Assignors made conditional payments or otherwise became financially responsible on behalf of its MA enrollees, for which Defendant was primarily liable and for which it did not reimburse Plaintiff's Assignors.

14.     On behalf of itself and the Class, Plaintiff seeks: (1) double damages under the MSP Act for Defendant's failure to properly reimburse conditional payments for Enrollees' accident-related medical expenses within the applicable limitations period; and (2) reimbursement for all sums, on a fee-for-service basis, that Plaintiff's Assignors and Class Members were billed for medical care and treatment rendered to the Enrollees within the applicable limitations period, for

which Defendant was responsible as primary payer.

## PLAINTIFF'S CLASS REPRESENTATIVE CLAIM
## <u>RELATING TO A MEDICARE PART C BENEFICIARY</u>

15.     In this Complaint, Plaintiff outlines three different instances where a Medicare

Part C Beneficiary that incurred accident-related expenses that were to be paid by the Defendant

for which the Defendant failed to pay or reimburse.

***The E.F. Claim Wherein Plaintiff's Assignor, Health Care Advisor Services, Inc. Suffers an
Injury-In-Fact***

16.     On September 29, 2014, E.F., a Medicare beneficiary, was injured in a slip and

fall accident. Pursuant to Medical Payments ("Med Pay") coverage, Defendant was contractually

obligated to provide primary coverage for accident-related expenses. E.F.'s injuries include, but

are not limited to (the complete list is attached hereto as Exhibit A, *Claims Data*):

     a.   E885.9[1] - Fall from other slipping, tripping, or stumbling,

     b.   959.2 - Shoulder and upper arm injury,

     c.   847.9 - Sprain of unspecified site of back, etc.

17.     As a direct and proximate result of this accident and the injuries listed above, E.F.

required medical items and services. E.F. was enrolled in an MA plan, managed by Health Care

Advisor Services, Inc. ("Health Care Advisor Services"). E.F.'s medical expenses were

subsequently charged to Health Care Advisor Services for the medical services that E.F. received

from September 29, 2014 to October 18, 2014. These items and services have caused Health

Care Advisors an actual monetary loss.  Despite the Defendant being fully aware it was the

primary payer, the Defendant has failed to reimburse for the items and services for which

---

[1] Federal regulations require that medical data be maintained in electronic data sets.  45 C.F.R. §
162.1000, *et. seq.*; 42 C.F.R. § 424.3.

Plaintiff currently owns right, title and interest to these rights of reimbursement.

18.     Defendant should have paid for these expenses or should have reimbursed for the items and services so that Health Care Advisor Services had to cover financially for E.F.'s medical, but Defendant failed to do so.

19.     Defendant's failure to pay and reimburse gives rise to statutory and common-law rights to recover these conditional payments from Defendant.

20.     Health Care Advisor Services' right to recover its payments for these medical services was assigned to Plaintiff.

21.     E.F. received the following medical items and services, which include but are not limited to (the complete list is attached hereto as Exhibit A):

        a.   ||73030|X-ray exam of shoulder  [A],

        b.   73564       X-ray exam knee 4 or more  [A]

        c.   ||73562|X-ray exam of knee 3  [A]

        d.   ||71020|Chest x-ray 2vw frontal&latl, etc.

22.     Plaintiff's assignor, Health Care Advisor Services, was charged $29,883.14 that Defendant should have paid or otherwise should have reimbursed the Plaintiff as the owner of the rights to receive reimbursement on the secondary payments.

23.     For this one claim, separate and apart from all damages owed to the rest of the class and Plaintiff, Defendant is required to pay Plaintiff up to the limits of its policy times two to cover all or as much of the of $29,883.14 amount for the accident-related expenses.

***The D.G. Claim Wherein Plaintiff's Assignor, MMM Holdings, LLC, Suffers an Injury-In-Fact***

24.     On December 3, 2014, D.G., a Medicare beneficiary, was injured in an accident whereby Defendant was the general liability insurer for the tortfeasor. D.G.'s injuries include,

but are not limited to (the complete list is attached hereto as Exhibit B, *Claims Data*):

    a.  E849.5 - Street and highway accidents,

    b.  E888.8 - Other fall,

    c.  959.3 - Elbow, forearm, and wrist injury, etc.

    25.    As a direct and proximate result of this accident, D.G. required medical items and/or services. D.G. was enrolled in a MA plan, managed by MMM Holdings, LLC ("MMM"). D.G.'s medical expenses were subsequently paid by MMM for dates of service of December 3, 2014 through December 16, 2014.

    26.    Following D.G.'s claim against Defendant's insured, Defendant indemnified its insured Tortfeasor and made payments pursuant to a settlement of D.G.'s claims. However, Defendant did not reimburse Plaintiff or MMM for D.G.'s medical items and services within the requisite time frame, as required of a primary payer. Defendant's failure to pay and reimburse gives rise to statutory and common-law rights to recover these conditional payments from Defendant.

    27.    MMM's right to recover its payments for these medical services was assigned to Plaintiff.

    28.    D.G. received the following medical items and services, which include but are not limited to (the complete list is attached hereto as Exhibit B):

    a.  73100  X-ray exam of wrist  [A]

    b.  73030  X-ray exam of shoulder  [A]

    c.  73060  X-ray exam of humerus  [A]

    d.  99283  Emergency dept visit  [A], etc.

    29.    Plaintiff's assignor, MMM, was charged $1,892.84, that Defendant should have

paid or otherwise should have reimbursed to Plaintiff as the owner of the rights to receive reimbursement on the secondary payments.

30.     For this one claim, Defendant owes Plaintiff $1,892.84 for all accident-related expenses.

***The R.C. Claim Wherein Plaintiff's Assignor, Hygea Holdings Corp., Suffers an Injury-In-Fact***

31.     On September 6, 2012, R.C., a Medicare beneficiary, was injured in an accident whereby Defendant was the general liability insurer for the tortfeasor. R.C.'s injuries include, but are not limited to (the complete list is attached hereto as Exhibit C, *Claims Data*):

    a.  881.00 - Open wound of forearm, without mention of complication, etc.

32.     As a direct and proximate result of this accident, R.C. required medical items and/or services. R.C. was enrolled in a MA plan, managed by Hygea Holdings Corp ("Hygea"). R.C.'s medical expenses were subsequently paid by Hygea for dates of service of September 9, 2012. Hygea was financially responsible for each of the Medicare Part C Beneficiaries assigned to it.  R.C. is one of those beneficiaries.  The MA plan requires that Hygea be financially responsible for all items and services provided to any of it assigned beneficiaries.  This arrangement was approved by CMS pursuant to the code of federal regulations.

33.     Following R.C.'s claim against Defendant's insured, Defendant indemnified its insured Tortfeasor and made payments pursuant to a settlement of R.C.'s claims. However, Defendant did not reimburse Plaintiff or Hygea for R.C.'s medical items and services within the requisite time frame, as required by a primary payer. Defendant's failure to pay and reimburse gives rise to statutory and common-law rights to recover these conditional payments from Defendant. Furthermore, the Defendant provided for Med Pay coverage that required payment irrespective of fault to the Medicare Beneficiary.  The defendant admitted it was required to

make the payment, but never did.

34.     Hygea's right to recover its payments for these medical services was assigned to Plaintiff. Hygea suffered an economic loss by virtue of having to cover the expenses that were incurred by R.C.

35.     R.C. received the following medical items and services, which include but are not limited to (the complete list is attached hereto as Exhibit C):

     a.   99212 Office/outpatient visit est [A], etc.

36.     Plaintiff's assignor, Hygea, was charged $1,227.48 that Defendant should have paid or otherwise should have reimbursed the Plaintiff as the owner of the rights to receive reimbursement on the secondary payments.

37.     For this one claim, Defendant owes Plaintiff $1,227.48 amount for all accident-related expenses.

38.     The factual allegations regarding E.F., D.G., and R.C.'s claims were identified by Plaintiff using various databases and claims data.

39.     Defendant reported its responsibility as an RRE to CMS[2], including information about E.F., D.G., and R.C.'s accidents, the name of the reporting entity, and the type of insurance offered. This reporting demonstrates Defendant was aware of the accident and even assigned claim numbers to said accident. [*See* Exhibit E, *MyAbility Reports*].

40.     On August 22, 2017, Plaintiff transmitted a letter to Defendant requesting information related to potential reimbursements to Plaintiff's assignors as mandated by 42 C.F.R.

---

[2] **Plaintiff has identified at least 38 instances** where Defendant has entered into settlements with Medicare beneficiaries. **Plaintiff has identified at least 28 instances** where Defendant admitted it was to provide primary payment on behalf of Enrollees. Plaintiff attaches a list of such instances. [*See* Exhibit D, *Defendant's MSP Reporting*].

§ 411.25. Thus, Defendant had actual and constructive knowledge that it was the primary payer for all the Enrollees that were paid by the in-network providers of Plaintiff's assignors. Defendant was required to ascertain the information for each enrollee in accordance with 42 C.F.R. § 411.25 and supply the information to Plaintiff's assignors and/or Plaintiff as requested. However, on September 19, 2017, Defendant responded to Plaintiff's letter refusing to comply. On October 6, 2017, Plaintiff replied to Defendant's September 19 letter. [*See* Exhibit F, *42 C.F.R. § 411.25 Letters*].

41.     Plaintiff then cross-referenced Defendant's information reported to CMS and ISO with the claims data provided by Health Care Advisor Services, MMM, and Hygea. Plaintiff identified settlement agreements with Defendant whereby D.G. and R.C. were involved in an accident and incurred medical expenses as a result and MMM and Hygea provided payment for accident-related expenses. Further, Plaintiff identified the E.F. claim wherein E.F. was involved in an accident and incurred medical expenses as a result. Plaintiff determined that Defendant was to provide primary payment for E.F.'s accident-related expenses, instead of Health Care Advisor Services. Thus, there is evidence of overlapping coverage and evidence that the payments were made by a Medicare Part C payer instead of the primary payer, demonstrating an injury-in-fact as the payer or full-risk entity has been financially damaged by Defendant's failure to pay or reimburse. And, based on the nature of the medical treatment and Defendant's failure to reimburse Health Care Advisor Services, MMM, and Hygea for those medical expenses, the data demonstrates that Defendant failed to pay for the claims of E.F., D.G., and R.C. as a primary payer.

42.     Full details of this claim, i.e., specific payments, coverage determinations, etc., are in Defendant's possession and will be located and assessed through the process of discovery. Defendant was and is in the best position to know which payments have been made by Plaintiff's

Assignors because the MAOs and its in-network providers frequently will not know which of its payments has been subsequently duplicated by an insurer. *See U.S. v. Baxter Int'l, Inc.*, 345 F.3d 866, 885 (11th Cir. 2003) (the MSP Act "is built on the recognition that **Medicare frequently will <u>not</u> know** which of its payments has been subsequently duplicated by an insurer. . ."). Defendant has failed to provide forthcoming data to provide the full extent of its primary payer obligations.

## JURISDICTION AND VENUE

43.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question).

44.     Venue is proper under 28 U.S.C. § 1391 in the United States District Court for the Southern District of Florida because it is the district in which the cause of action accrued.

45.     This Court has personal jurisdiction over Defendant insofar as the Defendant is authorized and licensed to conduct business in Florida, maintain and carry on systematic and continuous contacts in this judicial district, regularly transact business within this judicial district, and regularly avail themselves of the benefits in this judicial district.

46.     All conditions precedent to this action have occurred, been performed, or have been waived, including meeting any purported threshold amount to the extent that is applicable.

## PARTIES

47.     Plaintiff, MSP Recovery Claims, Series LLC, is a Delaware series limited liability company with a principle place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155. Plaintiff has established various Specific series wherein each specific Series is owned exclusively by MSP Recovery Claims, Series, LLC. The specific Series have been designated with specific characteristics to identify the specific assignors assigning to Plaintiff. All

specific Series form a part of Plaintiff and owned by Plaintiff. Plaintiff's limited liability company agreement provides for the establishment of one or more specific Series. The records maintained for such Series account for the assets associated with such specific Series. All records of all Series are maintained together with all assets of the limited liability company. The limited liability company agreement provides that there are no limitations on liabilities of any Series. Pursuant to its limited liability agreement and applicable amendment(s), Plaintiff owns and controls any and all Series interests and all claims rights transferred from any assignor and may allocate any assets, including assignments, to a Series. Plaintiff's limited liability agreement provides that any rights and benefits arising from assignments to its series shall belong to Plaintiff.

48.   Numerous assignors have assigned their recovery rights to assert the causes of action alleged in this Complaint to series LLCs of the Plaintiff, and Plaintiff maintains the legal right, by and through its limited liability company agreement, to sue on behalf of each of its designated series LLCs. As such, Plaintiff has the right and authority to seek reimbursement of Medicare payments made by the assignors that should have been paid, in the first instance, by Defendant.

49.   Plaintiff may pursue and enforce all legal rights of recovery and reimbursement for health care services and Medicare benefits provided by health care organizations that administer Medicare benefits for beneficiaries under Medicare Part C; whether said rights arise from (i) contractual agreements, such as participation and network agreements with capitation and risk sharing arrangements, and/or (ii) state and federal laws that provide for the reimbursement of conditional payments made by the assignor health plans, including the right to recover claims for health care services billed on a fee-for-service basis.

50.   Defendant is an insurance company that is authorized to conduct business in the

State of Florida.

51.     Complete diversity exists between the parties.

## CLASS REPRESENTATIVE ASSIGNMENT AGREEMENTS

52.     Plaintiff's assignors have executed irrevocable assignments of any and all rights to recover conditional payments made on behalf of Assignors' health plan members and Enrollees, including those who were insured by Defendant. The specific assignment language contained in the assignment agreements from Health Care Advisor Services, MMM, and Hygea, three of the representative claims in this lawsuit, are set forth below. For each of these claims, the Assignors were financially responsible financially to cover all of the items and services. Each entity is either an MAO, first tier entity, downstream entity (or its assignees) approved by CMS to bear the risk of loss.

53.     By agreement dated August 28, 2015, Health Care Advisor Services irrevocably assigned to MSP Recovery, LLC ("MSP Recovery") any and all of its right to recover conditional payments made on behalf of its Enrollees ("Health Care Advisor Services Assignment"):

> Client hereby *assigns*, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for Client that Client has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims.

[Exhibit G, § 4.1, *Health Care Advisor Services-MSP Recovery Assignment*] (emphasis added).

54.     On June 12, 2017, MSP Recovery assigned all rights acquired from the Health Care Advisor Services Assignment to a protected series of Plaintiff, i.e., Series 15-08-27 LLC.

55.     Specifically, the assignment from MSP Recovery to the protected series states:

> [E]ach undersigned Assignor… irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of

Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the…**Recovery Agreement** dated **August 28, 2015**, each by and among **Health Care Advisors Services, Inc.**, a Florida corporation **(the "Client")**, and **MSP Recovery, LLC**, a Florida limited liability company.

[Exhibit H, *MSP Recovery-Plaintiff Assignment*]

56.     By agreement dated June 12, 2017, MMM irrevocably assigned to MSP Recovery

any and all of its right to recover conditional payments made on behalf of its Enrollees ("MMM

Assignment"):

> Client hereby irrevocably ***assigns***, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims… all of which shall constitute the "Assigned Claims". The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

[Exhibit I, § 4.1, *MMM-MSP Recovery Assignment*].

57.     On June 12, 2017, MSP Recovery assigned all rights acquired from the MMM

Assignment to a protected series of Plaintiff, i.e., Series 17-02-554 LLC.

58.     Specifically, the assignment from MSP Recovery to the protected series states:

> [E]ach undersigned Assignor… irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Recovery Agreement** dated **June 12, 2017**, by and among **MMM Holdings, LLC**, a Puerto Rican limited liability company **(the "Client")**, and **MSP Recovery, LLC**, a Florida limited liability company (the "Agreement").

[Exhibit J, *MSP Recovery-Plaintiff Assignment*].

59.     By agreement dated September 15, 2015, Hygea irrevocably assigned to MSP

Recovery any and all of its right to recover conditional payments made on behalf of its Enrollees

("Hygea Assignment"):

> Client hereby irrevocably *assigns*, transfers, conveys, sets over and delivers to MSP
> Recovery, or its assigns, any and all of Client's right, title, ownership and interest
> in and to all rights and entitlements, and all information and data used to pursue
> and/or recover monies for Client that Client has, may have had, or has asserted
> against any party including, but not limited to, primary payors and/or third parties
> that may be liable to Client arising from or relating to the Assigned Claims. By this
> Agreement, the parties acknowledge and agree to the following: (i) the transfer,
> grant, or assignment of any and all Client's right, title, ownership, interest and
> entitlements, and/or any information Client makes available, assigns, transfers,
> conveys or delivers to MSP Recovery is proprietary, confidential and the sole
> property of MSP Recovery or its assigns, and (ii) it shall remain the sole and
> exclusive property of MSP Recovery, and (iii) shall survive the termination or
> expiration of this Agreement, notwithstanding anything herein to the contrary.

[Exhibit K, § 1.1, *Hygea-MSP Recovery Assignment*] (emphasis added).

60.     On June 12, 2017, MSP Recovery assigned all rights acquired from the Hygea

Assignment to a protected series of Plaintiff, i.e., Series 15-08-19 LLC.

61.     Specifically, the assignment from MSP Recovery to the protected series states:

> [E]ach undersigned Assignor… irrevocably assigns, sells, transfers, conveys, sets
> over and delivers to Assignee and its successors and assigns, any and all of
> Assignor's right, title, ownership and interest in and to the "Assigned Claims",
> "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and
> products thereof) as such terms are defined in the... Health Care Cost **Recovery
> Agreement** dated **September 14, 2015**, by and among **Hygea Health Holdings,
> Inc.**, a Florida corporation **(the "Client")**, and **MSP Recovery, LLC**, a Florida
> limited liability company **(the "Agreement")**.

[Exhibit L, *MSP Recovery-Plaintiff Assignment*].

62.     All purported conditions precedent to the filing of this lawsuit have occurred or

been performed.

63.     Pursuant to Plaintiff's limited liability agreement, all rights arising from the

assignment to its series, along with the right to bring any lawsuit in connection with said

assignment, belongs to Plaintiff. Therefore, Plaintiff may pursue Health Care Advisor Services, MMM, and Hygea's rights to recover reimbursement of Medicare payments that should have been paid, in the first instance, by Defendant.

<u>**LEGAL BACKGROUND**</u>

**I.   The Medicare Act**

64.    In 1965, Congress enacted the Medicare Act with the purpose of establishing a federally-funded health insurance program for the elderly and disabled.

65.    The Medicare Act consists of five parts:  Part A, Part B, Part C, Part D, and Part E. Parts A and B create, describe, and regulate traditional fee-for-service, government-administered Medicare.  *See* 42 U.S.C. §§ 1395c to 1395i–5; §§ 1395–j to 1395–w.  Under Parts A and B, Medicare provides hospital insurance and coverage for medically necessary outpatient and physician services.  42 U.S.C. § 1395w-21(a)(1)(A).  These benefits are administered on a per-fee basis, meaning Medicare pays for a beneficiary's medical needs as they arise.  The United States Centers of Medicare & Medicaid Services ("CMS") provides coverage under Parts A & B.  Part C outlines the Medicare Advantage program—described in further detail below—wherein Medicare beneficiaries may elect to use private insurers, *i.e.*, MAOs, paid for by the United States, to provide Medicare benefits.  42 U.S.C. §§ 1395w–21–29.  Part D provides for prescription drug coverage for Medicare beneficiaries, and Part E contains various miscellaneous provisions.

**II.   Medicare Secondary Payer Laws**

66.    At the time of its inception, Medicare was the primary payer of medical costs. When a Medicare beneficiary was injured, the medical bill was submitted directly to Medicare, even if there was overlapping insurance coverage for that patient.  However, in an effort to reduce escalating costs, Congress altered the Medicare payment scheme in 1980 by adding the Medicare

Secondary Payer ("MSP") provisions to the Medicare Act.

67.     The Medicare Secondary Payer (MSP) statute, codified at 42 U.S.C. § 1395y, declares that, under certain conditions, Medicare will be the secondary rather than primary payer for its insureds, and, consequently, Medicare is empowered to recoup from the rightful primary payer, or from the recipient of such payment, if Medicare pays for a service that was, or should have been, covered by the primary insurer. Under the MSP provisions, codified at 42 U.S.C. § 1395y, Medicare is the "secondary payer" to all other sources of coverage.  If there is overlapping insurance coverage for a particular beneficiary, that overlapping coverage is primary, *i.e.*, it pays the medical expense first—Medicare is always secondary.

68.     The MSP is actually a collection of statutory provisions codified during the 1980s with the intention of reducing federal health care costs. In a nutshell, the MSP declares that, under certain conditions, Medicare will be the secondary rather than primary payer for its insureds. Consequently, Medicare is empowered to recoup from the rightful primary payer (or from the recipient of such payment) if Medicare pays for a service that was, or should have been, covered by the primary insurer. Although the statute is structurally complex—a complexity that has produced considerable confusion among courts attempting to construe it—the MSP's function is straightforward.

69.     To enforce this scheme, the MSP provisions created "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)[.]"  42 U.S.C. § 1395y(b)(3)(A).

70.     Defendant is a primary plan under § 1395y(b)(2)(A) because it is a liability insurer that, under a settlement agreement, paid Enrollees for covered medical expenses. *See* 42 U.S.C. §

1395y(b)(2)(A) (defining "primary plan" to include a group health plan or large group health plan…a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no-fault insurance); 42 C.F.R. § 411.21 (same).

### III.  Medicare Advantage Organizations

71.     In 1997, Congress amended the Medicare Act and added Part C. "The congressional goal in creating the Medicare Part C option was to harness the power of private sector competition to stimulate experimentation and innovation to create a more efficient and less expensive Medicare system." D. Gary Reed, Medicare Advantage Misconceptions Abound, 27 Health Law 1, 3 (2014). Part C gives Medicare beneficiaries the option of receiving Medicare benefits through private insurers (*i.e*., MAOs).[3]

72.     MAOs enter into a contract with CMS to administer and provide the same benefits received under traditional Medicare.  42 U.S.C. §§ 1395w-21, 1395w-23.  Pursuant to this contract, MAOs receive a fixed payment from CMS for each enrollee.  MAOs do not issue a Medicare "insurance policy" but, rather, send out a document describing the Medicare benefits that beneficiaries receive. They do not pay benefits pursuant to a 'policy', but rather under a statutory framework.  Thus, MAOs pay healthcare providers directly for the care received by Part C beneficiaries.  If the costs of this care exceed the fixed payment received from the government, the MAO assumes the risk and cost.  However, if that care costs less than the fixed payment, the MAO keeps the difference as profit.  Thus, MAOs are incentivized to provide health insurance more efficiently and focus on positive health outcomes in a way that traditional fee-for-service Medicare models are not.  *See* H.R.Rep. No. 105–149, at 1251 (1997) (Part C allows "the Medicare program

---

[3] Originally, these plans were considered "Medicare+Choice" plans, but the Medicare Modernization Act (MMA) of 2003 renamed this service "Medicare Advantage" plans.

to utilize innovations that have helped the private market contain costs and expand health care delivery options.").

73.     To become an MAO, a private insurer must enter a bidding process, meeting certain requirements set by CMS.  Additionally, in providing the basic benefits offered to traditional Medicare beneficiaries, MAOs must abide by coverage determinations provided by CMS and all coverage disputes between beneficiaries and MAOs must go through the traditional Medicare appeals process.  CMS sets the fixed rate at which MAOs will be remunerated per enrollee and establishes services the MAO must provide.

74.     An enrollee's health coverage with an MAO is strictly construed and regulated by CMS.  For instance, CMS creates templates that MAOs must utilize when creating documents, including among others, the evidence of coverage ("EOC"), a document that describes in detail the health care benefits covered by the health plan. CMS requires that every evidence of coverage contain the following language:

> We have the right and responsibility to collect for covered Medicare services for which Medicare is not the primary payer. According to CMS regulations at 42 CFR §§ 422.108 and 423.462, [insert 2017 plan name], as a Medicare Advantage Organization, will exercise the same rights of recovery that the Secretary exercises under CMS regulations in subparts B through D of part 411 of 42 CFR and the rules established in this section supersede any State laws.

75.     The amount paid to the MAO is carefully calibrated, taking into account, such factors as the geographic location, age, disability status, gender, institutional status, and health status of *each* Medicare Advantage enrollee, so as to ensure actuarial equivalence with the traditional Medicare fee-for-service program option.  *See* 42 U.S.C. § 1395w-23(c).

76.     Currently, there are over 16 million individuals enrolled in Medicare Advantage plans nationwide. More than 37 million individuals are enrolled in Medicare prescription drug plans ("PDPs"), either on a stand-alone basis or in connection with a Medicare Advantage plan.

77.     The size and expense of the Medicare Advantage program makes it important that insurance companies, like Defendant, do not deflect their financial obligations under the MSP law onto MAOs and ultimately onto the Medicare Trust Funds.[4]

78.      Beneficiaries who receive their benefits through the traditional Medicare scheme and those who elect to receive their benefits through an MAO plan are all considered Medicare beneficiaries.  Moreover, the MSP provisions apply with equal force to MAOs.  Indeed, MAOs are specifically allowed to "exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations[.]" 42 C.F.R. § 422.108(f).

79.     The legislative history of the MSP provisions demonstrate that MAOs were intended to occupy a status analogous to that of traditional Medicare:

> Under original fee-for-service, the Federal government alone set the legislative requirements regarding reimbursement, covered providers, covered benefits and services, and mechanisms for resolving coverage disputes.  Therefore, the Conferees intend that this legislation provide a clear statement extending the same treatment to private [MA] plans providing Medicare benefits to Medicare beneficiaries.

H.R. Rep. No. 105–217, at 638 (1997).

80.     Part C of the Medicare Act also contains the following important provisions:

> Notwithstanding any other provision of law, a Medicare+Choice organization may (in the case of the provision of items and services to an individual under a Medicare+Choice plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—
>
> (A)  the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or
>
> (B)  such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w–22(a)(4).

---

[4] Medicare is paid for through two trust fund accounts held by the U.S. Treasury.

81.     Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which … are not **reasonable** and **necessary** for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A) (emphasis added).

82.     Because this Section contains an express condition of payment—that is, "no payment may be made"—it explicitly links each Medicare payment to the requirement that the particular item or service be "reasonable and necessary."

83.     Once an MAO makes a payment for medical items and services on behalf of its beneficiaries, the payment is conclusive proof that the items and services were reasonable and necessary.

84.     If a Medicare beneficiary or primary payer contests an MAO's right to reimbursement, the claim is construed as "arising under" the Medicare Act. Therefore, the time limitations for contesting whether a claim is reasonable or necessary under the Medicare Act applies.

85.     In this case, Defendant failed to administratively appeal the MAOs' right to reimbursement within the administrative remedies period on a class-wide basis. Defendant, therefore, are time-barred from challenging the propriety or amounts paid.

86.     Furthermore, the MSP provisions create a private cause of action against a primary plan when the primary payer fails to pay first or does not reimburse an MAO for its payment: "There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with [the requirements of the MSP Act]." § 1395y(b)(3)(A).  The provisions do not place any limitations on which private parties may bring

suit.

## IV.   Primary Payer Reporting Requirements

87.     In 2007, the Medicare Act was once again amended by the Medicare, Medicaid and SCHIP Extension Act of 2007 ("MMSEA"), which aimed to improve the ability of CMS and MAOs to administer Medicare benefits.  Part of those changes specifically aimed to help CMS and MAOs identify when a Medicare beneficiary was covered by a primary insurance payer.

88.     The 2007 amendments, therefore, created an affirmative duty on primary payers, such as Defendant, to notify Medicare and MAOs when they should pay for medical expenses or be primary payers.  Specifically, Responsible Reporting Entities ("RRE"), which include insurers like the Defendant, must determine whether its insureds are Medicare beneficiaries when they enter into settlement agreements with them.   42 U.S.C. §§ 1395y(b)(7)(A)(i)[5] (RREs shall "determine whether a claimant (including an individual whose claim is unresolved) is entitled to benefits under" Medicare).  If an insured is a Medicare beneficiary, the RRE must electronically notify CMS of the accident and report the Medicare beneficiary's full name, Medicare Health Insurance Claim Number ("HICN"), gender, date of birth, complete address, and phone number. 42 U.S.C. § 1395y(b)(7)(A)(ii).[6]  Then, when CMS or an MAO receives a medical claim for payment for that identified Medicare beneficiary/insured, the claim can be cross-checked against the notification database to determine whether there is a primary payer responsible for the medical claim.  Anticipating the burden of the new reporting requirements, CMS developed a "query process" whereby an RRE can determine a claimant's Medicare status electronically and without

---

[5] *See* 42 C.F.R. § 411.25.
[6] RREs are also required to notify CMS and MAOs when the RRE has made the determination to assume responsibility for ongoing medical services or items for one their insureds that is also a Medicare beneficiary.

**Page 21 of 35**

authorization.  RREs can electronically query whether a particular insured is a Medicare beneficiary and, if so, make sure to notify Medicare when that insured is in an accident that resulted in the provision of medical treatment.

89.     An insurance company's failure to comply with these reporting requirements results in a civil money penalty of up to $1,000.00 for each day of noncompliance with respect to each claimant.  42 U.S.C. § 1395y(b)(8)(E)(i).

90.     However, compliance with these reporting requirements does not absolve the primary payer of its obligation to pay first.  The reporting requirements are separate and apart from a primary payer's obligation to pay first under the MSP provisions.  Reporting does not, itself, provide a safe harbor from making primary payments.  It only avoids the imposition of civil penalties.  If a primary payer was responsible to pay first, it must pay first regardless of conduct, intent, or even the primary payer's knowledge of a potential secondary payer.  The obligation of a primary payer to pay first or reimburse CMS or MAOs is only discharged by making the payment.

## V.     First-Tier and Downstream Entities

91.     In addition to MAOs, first-tier and downstream entities also suffer damages, i.e. an injury-in-fact, when a primary plan fails to make a payment or reimburse pursuant to the MSP laws.

92.     A first-tier entity is any party that enters into a written arrangement, acceptable to CMS, with an MAO, to provide administrative or health care services for a Medicare eligible individual under the MA program. 42 C.F.R. § 422.2; *see also Medicare Managed Care Manual*, Ch. 11 (Rev. 83, 04-25-07).

93.     A downstream entity is any party that enters into a written arrangement, acceptable to CMS, with persons or entities involved with the MA benefit, below the level of the arrangement

between an MAO (or applicant) and a first-tier entity. *See* 42 C.F.R. § 422.2.

94.     First-tier and downstream entities administer and provide Medicare services to the Enrollees. The first-tier and downstream entities bear the full risk of loss pursuant to their contractual obligation with MAOs.

95.     First-tier and downstream entities include Management Service Organizations ("MSO"), and Independent Physician Associations ("IPA"), and other full-risk providers whom all have standing to bring suit under 42 U.S.C. § 1395y(b)(3)(A). *See Mich. Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.,* 758 F.3d 787, 789–90 (6th Cir. 2014) (holding that medical providers who suffer an injury-in-fact have standing to sue primary plans in violation of its MSP obligations under 42 U.S.C. § 1395y(b)(3)(A)).

## CLASS DEFINITION

96.     The putative classes (hereinafter referred to as "Class Members") are defined as:

### Class 1 – Settlement Class

All Medicare Advantage Organizations, First Tier Entities, Downstream Entities or their assignees, that provide benefits under Medicare Part C, in the United States of America and its territories, who made payments for a Medicare beneficiary's medical expenses where Defendant:

(1) is the primary payer by virtue of having settled a claim with Medicare beneficiary enrolled in a MA plan;

(2) settled a dispute to pay for personal injuries with a Medicare beneficiary enrolled in a MA plan; and

(3) failed to reimburse Medicare Advantage Organizations, First Tier Entities, Downstream Entities or their assignees the payments provided for medical items and services related to the claims settled by the primary payer.

This class definition excludes (a) Defendant, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

**Class 2 – Contractual Obligation Class**

All Medicare Advantage Organizations, First Tier Entities, or their assignees, that provide benefits under Medicare Part C, in the United States of America and its territories, who made payments for a Medicare beneficiary's medical items and services within the last six years from the filing of the complaint where Defendant:

(1) is the primary payer as it is contractually obligated to pay for the medical items and services that are required to be covered by the Medicare Beneficiaries' liability, no-fault insurance or a workman compensation plan; and

(2) failed to pay or reimburse Medicare Advantage Organizations, First Tier Entities, or their assignees, for the medical items and services that were related to Medicare Beneficiaries' claims.

This class definition excludes (a) Defendant, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

## CLASS ALLEGATIONS

### National Damages Relief Classes

97.     This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members or their assignees who paid for their beneficiaries' medical expenses, when Defendant should have made those payments as primary payers and should have reimbursed the Class Members either because of a settlement or contractual obligation or both.

98.     As discussed in this class action Complaint, Defendant has failed to provide primary payment and/or appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP provisions.  This failure to reimburse applies to Plaintiff, as the rightful assignee of those organizations that assigned their recovery rights to Plaintiff, and to all Class Members.  Class action law has long recognized that, when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm.  This case, thus, is well suited for class-wide resolution.

99.     Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendant to make such payments.  The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers. Defendant's failure to reimburse Plaintiff and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

100.     The Classes are properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy shown as follows:

   a.   **Numerosity**:  Joinder of all members is impracticable. Upon information and belief, the Classes are comprised of hundreds of MAOs, first tier entities, downstream entities, or their assignees throughout the United States of America and its territories, who failed to provide primary payment or were not reimbursed by Defendant after either (1) Defendant entered into a settlement with a Medicare beneficiary enrolled in a Medicare Advantage plan administered by an MAO or (2) failing to provide for primary payment for accident related expenses pursuant to insurance policy which provided no-fault coverage.  Thus, the numerosity element for class certification is met.

   b.   **Commonality**:  Questions of law and fact are common to all members of the Classes.  Specifically, Defendant's misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C.  Defendant failed to make reimbursement payments, report settlements or its ORM involving clients

who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course.  Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendant failed to comport with their statutory duty to pay or reimburse the assignors pursuant to the MSP provisions.  Each Class Member shares the same needed remedy, *i.e.*, reimbursement.  Plaintiff seeks to enforce their own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Medicare Part C beneficiaries, as a result of Defendant's practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c. **<u>Typicality</u>**:  Plaintiff's claims are typical of the Class Members' claims, as all have been damaged in the same manner. Plaintiff's and the Class Members' claims have the same essential characteristics, arise from the same course of conduct, and share the same legal theory. As the putative class representative, Plaintiff possesses the same interests and suffered the same injury as the other Class Members, which demonstrates a legally sufficient nexus between Plaintiff's claims and the Class Members' claims. Plaintiff's claims are typical of the Class Members' claims because Defendant failed to make primary payments or appropriately reimburse the Assignors for Enrollees' accident-related medical expenses, which it was obligated to do by the settlement agreements and its no-fault insurance policies it issued to the Enrollees. Plaintiff's claims are typical because Plaintiff, like the Class Members, has a right to relief for Defendant's failure to make primary payments, or reimburse Plaintiff and Class Members for conditional payments of the Enrollees' accident-related medical expenses. Plaintiff's and the Class Members' claims are based on the same

statutes, regulations, legal theories and factual situations. Defendant's business practices, acts and omissions are materially the same with respect to Plaintiff's and the Class Members' claims, as will be Defendant's legal defenses. Plaintiff's claims are, therefore, typical of the Classes.

d. **Adequacy**:  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff's interests in vindicating these claims are shared with all members of the Classes and there are no conflicts between the named Plaintiff and the putative Class Members.  In addition, Plaintiff is represented by counsel who are competent and experienced in class action litigation and also have no conflicts. In fact, two courts have already concluded that Plaintiff's counsel is "willing and able to take an active role as class representative and advocate on behalf of all class members." *E.g., MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017); *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 2015-27940 CA-01 (Fla. 11th Cir. Ct. 2017).

e. **Ascertainability**:  Locating members of the Class would be relatively simple, since CMS maintains records of all MAOs, i.e., those entities that have contracted with CMS pursuant to Medicare Part C, and providing notice to such entities would could be accomplished by direct communication.

101.   The Classes are properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior.  Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Classes.  Defendant, whether deliberately or not, failed to make required payments under the MSP provisions and failed to reimburse Class Members and those organizations that assigned their

recovery rights to Plaintiff, thus depriving both Plaintiff, as assignee of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

102.    It is the custom and practice of the CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiff maintains a reasonable methodology for generalized proof of Class-wide impact, using a software system (the "MSP System") designed and developed by Plaintiff and its counsel. The MSP System captures, compiles, synthesizes and analyzes large amounts of data in order to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiff is capable of using the MSP System to identify and quantify Class Members' claims, as it has done for its own claims.  Two other courts have recognized the MSP System as a viable method to prove damages in substantially similar cases wherein the plaintiff, like in this case, asserted an MSP private cause of action breach of contract causes of action. *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017); *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 2015-27940 CA-01 (Fla. 11th Cir. Ct. 2017).

103.    Proceeding with a damages class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the

expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties.  The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

104.    Administering the proposed Classes will be relatively simple. Defendant has either entered into settlement agreements with claimants who are also Medicare beneficiaries or provided no-fault coverage to Medicare claimants pursuant to its insurance policy.  Once that data identifying these settlement agreements and insurance policies are compiled and organized, Plaintiff can determine which of the policy holders were Medicare beneficiaries at the applicable time.  Then, using the database, Plaintiff and the Class Members can identify those payments made for medical treatment where the Defendant was (1) the primary payers and (2) for which reimbursement was not made. Indeed, two Florida state classes were recently certified in *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017) and *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 15-27940-CA-21 (Fla. 11th Cir. Ct. 2017) using the same methodology.

## CAUSES OF ACTION

105.    The basis for Plaintiff's claims is as a result of the Defendant's failure to pay or reimburse under which Medicare payments are secondary and reimbursable if any other insurer – even a tortfeasor's liability insurer–is liable.

106.    Defendant is a primary payer that that should have paid for the same items and/or services that were paid or otherwise financially absorbed by Plaintiff's Assignors. These items and services were incurred by the MAO and its in-network Medicare Part C providers as secondary payers because the primary payer should have paid for these items and/or services or should have

otherwise reimbursed the secondary payer which are Plaintiff's Assignors.

107.    In addition to having been beneficiaries with the Class Members at the time of accidents, Class Members' beneficiaries were also covered by a medical payments policy issued by Defendant.

108.    Defendant failed to appropriately reimburse the Class Members.

109.    Defendant issued medical payments policies and collected premiums.

110.    The Class Members advanced Medicare payments on behalf of their beneficiaries for medical treatment and supplies for which Defendant was responsible as primary payers. Defendant was primarily responsible by virtue of entering into settlements with Medicare beneficiaries enrolled in a Medicare Advantage plan administered by a Class Member or providing no fault coverage pursuant to an insurance policy. Class Members paid for the beneficiaries' Medicare Services when Defendant had the primary obligation to do so.  Accordingly, Plaintiff seeks damages on behalf of itself and similarly situated assignors and their assignees for Defendant's violation of the MSP provisions.

111.    The Defendant is liable since (1) the Defendant is a primary plan; (2) the Defendant's failed to provide for primary payment or appropriate reimbursement; and (3) caused damages as a result of having a secondary payer cover the financial costs of the items or services that were to be paid by the primary payer.

### COUNT I
### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)
### Both Classes

112.    Plaintiff incorporates by reference paragraphs 1-111 of this Complaint.

113.    Plaintiff asserts a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of itself and all similarly-situated assignors.

114.     The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

115.     Defendant's liability insurance policies are primary plans, and Defendant was the primary payer, under 42 U.S.C. § 1395y(b)(2), because Defendant entered into a settlement agreement with Enrollees to pay for their accident-related expenses. Defendant is liable if they ever had a responsibility to make a payment, even if they subsequently paid out the maximum benefits under the policies.

116.     Defendant is also a primary payer that that should have paid for the same items and/or services that were paid or otherwise financially absorbed by Plaintiff's assignor. These items and services were incurred by the MAO and its in-network Medicare Part C providers as secondary payers because the primary payer should have paid for these items and/or services or should have otherwise reimbursed the secondary payer which are Plaintiff's assignors.

117.     In addition to having been beneficiaries with the Class Members at the time of accidents, Class Members' beneficiaries were also covered by a medical payments policy issued by Defendant.

118.     Instead, the Class Members and entities that have assigned their recovery rights to Plaintiff paid for those items and services as part of providing Medicare benefits.

119.     Because Defendant was the primary payer, the Class Members' payment of the accident-related medical expenses were conditional payments, which ordinarily are made by Medicare providers for services not covered by other applicable insurance.

120.     Defendant was required to timely reimburse the assignors for their conditional

payments of the Enrollees' accident-related medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(ii); 42 C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). Defendant failed to do so.

121.    Because Defendant failed to reimburse Plaintiff and the Class Members, Plaintiff and the Class Member suffered money damages.

122.    Defendant has derived substantial profits by placing the burden of financing medical treatments for their policy holders upon the shoulders of the assignors.  Not only did the Defendant avoid having to pay for medical expenses it was otherwise obligated to pay, the Defendant took advantage of the less expensive costs passed on to Medicare patients.

123.    Therefore, Plaintiff and the Class Members may avail themselves to the MSP private cause of action when a primary plan fails to make primary payment or to reimburse the assignors' secondary payment.

124.    In this case, Defendant failed to administratively appeal the assignors' right to reimbursement within the administrative remedies period on a class wide basis. Defendant, therefore, are time-barred from challenging the propriety or amounts paid.

125.    Plaintiff, for itself and on behalf of the Class, brings this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendant for its failure to make appropriate and timely reimbursement of Plaintiff's and Class Members' conditional payments of their Enrollees' accident-related medical expenses.

**COUNT II**
**Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract**
**(Only for Contractual Obligation Class Members)**

126.    Plaintiff incorporates by reference paragraphs 1-111 of this Complaint.

127.    The Assignors are subrogated the right to recover primary payment from Defendant

for Defendant's breach of contract with their insured, pursuant to the MSP provisions. Specifically, Defendant was contractually obligated to pay for medical items and services arising out of an accident, and Defendant failed to meet that obligation. This obligation was, instead, fulfilled by Plaintiff and the Class Members. Under the MSP provisions, Plaintiff is permitted to subrogate the enrollee/insured's right of action against Defendant. See 42 C.F.R. § 411.26.

128.    Plaintiff complied with conditions precedent to the institution of this action, to the extent applicable.

129.    Defendant failed and/or refused to make complete payments of the Enrollees' accident-related expenses as required by its contractual obligations.

130.    Defendant failed to pay each enrollee's covered losses, and Defendant had no reasonable proof to establish that it was not responsible for the payment.

131.    Defendant's failure to pay the medical services and/or items damaged Plaintiff and the Class Members as set forth herein. Plaintiff and the Class Members processed medical expenses and are entitled to recover up to the statutory policy limits for each enrollee's medical expenses related to the subject accidents, pursuant to their agreements with CMS and the provider of services.

## JURY TRIAL DEMAND

132.    Plaintiff demands a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

133.    WHEREFORE, Plaintiff, individually and on behalf of the Class Members described herein, prays for the following relief:

      a.  find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the respective Class;

b.  designate Plaintiff as representative for the respective Class and Plaintiff's undersigned counsel as Class Counsel for the respective Class; and

c.  issue a judgment against Defendant that:

　　i.  grants Plaintiff and the Class Members a reimbursement of double damages for those moneys the Class is entitled to under 42 U.S.C. § 1395y(b)(3)(A);

　　ii.  grants Plaintiff and the Class Members a reimbursement of damages for those moneys the Class is entitled to pursuant to their direct right of recovery for breach of contract within Count II;

　　iii.  grants Plaintiff and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

　　iv.  grants Plaintiff and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: January 19, 2018.                          Respectfully submitted,

**MSP RECOVERY LAW FIRM**
*Counsel for Plaintiff*
5000 S.W. 75th Avenue, Suite 300
Miami, Florida 33155
Telephone: (305) 614-2239

By: */s/ Frank C. Quesada*
Frank C. Quesada, Esq., Fla. Bar No. 29411
E-mail:        serve@msprecovery.com
               fquesada@msprecovery.com

**ARMAS BERTRAN PIERI**
*Counsel for Plaintiff*
4960 SW 72nd Avenue, Suite 206
Miami, Florida 33155
Phone: (305) 461-5100

J. Alfredo Armas FL Bar No. 360708
Eduardo E. Bertran, FL Bar No. 94087
E-Mail:        alfred@armaslaw.com
               ebertran@armaslaw.com

## CERTIFICATE OF SERVICE

**I CERTIFY** that a true and correct copy of this motion was electronically filed with the Clerk of the Court *via* CM/ECF on this 19th day of January 2018. I also certify that the foregoing was served on all counsel or parties of record on the attached Service List either *via* transmission of Notices of Electronic Filing generated by CM/ECF or some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

*/s/ Frank C. Quesada*

## SERVICE LIST

**Valerie Greenberg, Esquire**
**Stacy J. Rodriguez, Esquire**
**Ari H. Gerstin, Esquire**
**Jeffrey B. Pertnoy, Esquire**
**Jonathan D. Lamet, Esquire**
AKERMAN LLP
*Counsel for Defendant*
Three Brickell City Centre
98 Southeast 7th Avenue, Suite 1100
Miami, FL 33131
Phone: (305) 374-5600
Fax: (305) 374-5095
E-Mail:      valerie.greenberg@akerman.com
                  stacy.rodriguez@akerman.com
                  ari.gerstin@akerman.com
                  jeffrey.pertnoy@akerman.com
                  jonathan.lamet@akerman.com