# RECOVERY AGREEMENT

**THIS RECOVERY AGREEMENT** ("**Agreement**") is made this 12 day of June, 2017, ("**Effective Date**") by and between MMM Holdings, LLC., a Puerto Rico limited liability company ("**Client**") and **MSP Recovery, LLC**, a Florida Limited Liability Company and/or its assigns ("**MSP Recovery**").

**WHEREAS**, Client is a Health Maintenance Organization, Maintenance Service Organization, Independent Practice Association, Medical Center, and/or other health care organization and/or provider and is duly authorized by state or federal law, and/or other administrative or licensing agencies to provide or arrange for the provision of medical and health care services and/or supplies including medications, treatment or other procedures ("health care services") to persons, including but not limited to those who are covered under government healthcare programs such as Medicare, Medicare Advantage or Medicaid; and

**WHEREAS**, Client has certain legal rights to recover payments for the provision of health care services arising from contractual agreements, such as participation and network agreements with applicable capitation and risk sharing arrangements, and state and federal laws that provide for the reimbursement of conditional payments made by the Client, including the right to recover claims for health care services that are billed on a fee for service basis (the "**General Claims**"); and

**WHEREAS**, MSP Recovery has expertise in analyzing claims, identifying primary payors and recovering costs or claims for health care services paid by or on behalf of Client for which Client was not or should not have been the primary payor (the amounts of such payments by Client being the "**Client Paid Amount**"); and

**WHEREAS**, MSP Recovery is in the business of identifying and analyzing Parts A, B and D of Client's Medicare, Medicare Advantage and/or Medicaid claims (the "**Medicare/Medicaid Claims**, and together with the General Claims, the "**Claims**") and pursuing the recovery of Claims; and

**WHEREAS**, Client wishes to assign to MSP Recovery all right, title, interest in and ownership of the Claims, including all underlying documents relating to the Claims.

**NOW THEREFORE**, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree to as follows:

## ARTICLE I

1.1 Recovery of the Claims.

In order for MSP Recovery to provide its analysis, identification and claims recovery services (the "**Services**") and pursue recovery of the Assigned Claims (as hereinafter defined), Client shall provide MSP Recovery with historical claims data as well as the most updated claims data that Client's current systems can provide. Client shall provide ongoing data transfers at intervals of no less than 30 days. The transfer and delivery of Client's claims data shall be in compliance with HIPAA and shall be *via* a secure file transfer protocol site in accordance with Client's data security requirements. It is the intent of the Parties that such data will be analyzed using MSP Recovery's platform, which will allow MSP Recovery to identify claims that should be paid by a primary payor, including those that should have been paid within the "clean claims time period" as required by state and/or federal laws as it pertains to the processing of claims by a Medicare Advantage Organization and/or under any of the requirements of any state agency that governs any Medicaid beneficiary payment requirements for medical services and/or supplies.



Upon receipt of Client's claims data, MSP Recovery shall conduct a review and analysis of the data and use its best efforts to identify the Assigned Claims for which Client has a legal right of recovery and reimbursement. In accordance with Article I, all claims that have been or can be identified by MSP Recovery as being recoverable pursuant to any contractual, statutory, equitable or legal basis, whether state or federal (including the Medicare Secondary Payer Act) and whether arising as a Part A, B or D claim(s) shall be deemed Assigned Claims. As part of its services and recovery efforts, MSP Recovery will determine the available primary insurance coverage and/or other responsible parties for secured[1] and unsecured[2] claims and pursue those claims against the appropriate parties.

MSP Recovery shall initiate and pursue the recovery of the Assigned Claims and, for each potentially recoverable Assigned Claim, MSP Recovery shall use commercially reasonable efforts to recover the value of such Assigned Claim. MSP Recovery shall pursue the recovery and reimbursement of the Assigned Claims in its own name or in the name of an affiliated entity. Accordingly, MSP Recovery may assign this Agreement to any affiliated entity. MSP Recovery may, in its discretion, contract with law firms and attorneys, experts, investigators and/or claims specialists to assist it in pursuing recoveries. MSP Recovery will use its best efforts in pursuing recovery for the Assigned Claims and makes no express or implied promises regarding the existence or amounts of potential recoveries, given that the results of its analysis are case-specific and will vary. Client acknowledges that no guarantees or promises have been made regarding the amount or results of potential recoveries.

MSP Recovery's services focus on the analysis, identification and recovery of conditional payments that have already been made by the Client. MSP Recovery does not perform or provide any of the following services: claims related or enrollee/member-facing functions; healthcare services; administrative services; the processing of claims for health care services; connecting potential beneficiaries to health plans; providing customer service to beneficiaries, enrollees or members; sales or marketing services; utilization management; member application, enrollment or membership functions; claims administration, processing or coverage functions; credentialing; provider network management. MSP Recovery's services do not negatively impact enrollees or Medicare Advantage members or otherwise put them at any financial risk. Accordingly, MSP Recovery is neither a first tier nor downstream entity and/or provider. Client has taken all steps to ensure that this contract is acceptable to CMS and is in full compliance with CMS (as hereinafter defined) contracting requirements and guidelines.

## ARTICLE II

2.1. Compensation of MSP Recovery.

In full consideration of providing the services to Client, Client shall assign the Assigned Claims to MSP Recovery or its affiliates as provided for in Article IV. Client will have no other obligation to compensate MSP Recovery for any costs incurred by MSP Recovery in undertaking the services hereunder or in relation to recovery of any Assigned Claims. As between the parties, all costs and expenses for the services and pursuit of the Assigned Claims shall be for the account of MSP Recovery. Client shall have no liability to MSP Recovery for the value of any Assigned Claim or the failure of MSP Recovery to recover



[1] A secured claim is one in which a payment is required pursuant to an insurance agreement whereby either the terms of the policy and/or by statutory requirement, the insurer is required to pay for medical services before any other available sources of payment.

[2] An unsecured claim is one whereby there is either no contractual obligation to be a Primary Payer or where the Primary Payer has paid the limits of its contractual obligation.

on any Assigned Claim, and MSP Recovery shall have no liability to Client for the value of any Assigned Claim or the failure of MSP Recovery to recover on any Assigned Claim.

2.2 Costs.

Client shall not be responsible to pay any of MSP's costs. MSP shall be entitled to the recovery of any its costs from the third-parties (i.e. primary payors) that it pursues. Costs include, but are not limited to filing fees, witness fees, consultant fees, deposition fees, court reporter fees, photocopy charges, and expenses reasonably related and necessary for the investigation, pursuit and recovery of the Assigned Claims ("Costs"). MSP shall pay these Costs up front, however, once there is a settlement and/or judgment amount recovered, if necessary, MSP shall seek court approval to recover said Costs from third parties. If MSP is unsuccessful in recovering it Costs, Client shall not be responsible to pay any of MSP's Costs. A closing statement shall be provided by MSP to Client which will include full details of the costs and the amounts obtained.

2.3 Client's Contingent Payment.

MSP will pay to Client, out of the proceeds of any recovery made on the Claims, a contingent deferred purchase price as consideration for the Assigned Claims. Client will receive 50% of the Net Proceeds of any Assigned Claims. For purposes of this Agreement, "**Net Proceeds**" of any Assigned Claim is defined as the gross proceeds recovered in respect of such Assigned Claim, minus any Costs (as hereinafter defined) (whether in litigation or otherwise) that is directly traceable to such Assigned Claim(s) for which recovery was made. Attorneys' fees are not included in the Net Proceeds definition and any attorneys' fees that are recovered pursuant to a fee shifting statute by settlement or otherwise shall not affect the computation of the Net Proceeds amount. To the extent that any attorneys' fees are awarded pursuant to a multi-district litigation and/or a class action or any other mass tort or litigation procedure wherein a court awards attorneys' fees from the total settlement award and/or the defendant agrees to a negotiated fee award, such attorneys' fees shall not affect the computation of the Net Proceeds amount. For purposes of this Agreement, "proceeds of any recovery" shall also include the sale by Client of all or a portion of its 50% recovery rights in one lump sum or in divisible amounts.

The breakdown and percentages described above shall also apply irrespective of payment under any Medicaid, commercial insurance, and medical plans. Any health plan(s) of the Client are encompassed within the Agreement.



## ARTICLE III

3.1. Recoveries; Settlements.

Any and all amounts recovered by MSP Recovery in connection with the Assigned Claims will be reported to Client on a monthly basis *via* automatic electronic reports. Client shall designate an electronic email address to obtain such information. All payments received by MSP Recovery shall be segregated into a segregated lockbox account entitled MSP Recovery -______________". Client shall receive payments by the 10th of each month for the prior month's activity of all cleared funds, minus any costs incurred for any claims and/or expenses during the prior month.

3.2. Closing Statement.

Upon a recovery and the conclusion of a particular representation with regard to an Assigned Claim, MSP Recovery shall provide Client a closing statement reflecting an itemization of all costs and expenses, together with the total amount of recovery. MSP Recovery shall retain a copy of this Agreement and any closing statements for six (6) years after execution of the closing statement. During such period, Client may inspect these documents at reasonable times and upon reasonable notice.

## ARTICLE IV

4.1 Assignment of Claims.

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims". The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all documents relating to the Assigned Claims (the "**Assigned Documents**"). The Documents include, but are not limited to, those documents listed on Schedule A to the attached.

4.2 Continuing Assignment.

Client acknowledges that Claims that arise after the Effective Date of this Agreement ("Prospective Claims") shall also be assigned to MSP Recovery as the Client's data is transferred to MSP Recovery for Claims' analysis and to pursue possible recovery on the Assigned Claims. In order to convey to MSP Recovery the assignment of the Prospective Claims, Client shall execute the addendum in the form attached as Exhibit A to this Agreement (the "**Assignment Addendum**").



## ARTICLE V

5.1. Proprietary Information.

Recognizing the parties' proprietary interests in their respective business operations, MSP Recovery and Client each acknowledge the confidential nature of their relationship, and any information or data relating to the business operations, systems, components, customers, prices, methods, plans, programs or results exchanged by the parties shall remain confidential and collectively be referred to as "**Trade Secrets**". The parties shall not disclose any information, including protected health information, pertaining to Client's members, patients, and/or methods of recovery, and Trade Secrets.

## ARTICLE VI

6.1. Representations, Warranties, and Covenants.

(a) General Warranties of Both Parties. Each party's execution, delivery and performance of this Agreement has been duly authorized by all appropriate corporate action and this Agreement constitutes a valid, binding and enforceable obligation as to each party.

(b) Client's Representations, Warranties, and Covenants.

i. Neither the execution, delivery, nor performance of this Agreement will conflict with or violate any other agreement, license, contract, instrument or other commitment or arrangement to which Client is bound.

ii. Client has all right, title, interest in and ownership of the Claims being assigned subject to this Agreement, free and clear of all liens and encumbrances.

iii. Client will cooperate with MSP Recovery and deliver to MSP Recovery all information relating to the Assigned Claims, including all Assigned Documents, to enable MSP Recovery to perform the Services and recover the Assigned Claims.

## ARTICLE VII

7.1. Successors and Assigns.

This Agreement shall be binding upon the successors, legal representatives or assigns of the parties hereto.

7.2. Indemnification.

Client shall indemnify MSP Recovery in connection with any recoveries that may be owed and/or are claimed by any of Client's first tier and/or downstream providers. This includes, but is not limited to, Maintenance Service Organizations, Independent Physicians Associations and/or any other entity.

7.3. Governing Law and Venue.

The interpretation, construction and enforcement of this Agreement shall be in accordance with the laws of the State of Florida, without regard to any conflict of laws principles that would apply any laws other than those of the State of Florida and any action, whether in law or in equity must be commenced and maintained in federal or state court within Miami-Dade County, Florida.

7.4. Severability.

Should any term(s) of this Agreement be deemed unenforceable, all other terms shall survive and remain in full force and effect. This includes any and all financial terms, rulings and/or other findings of the Centers for Medicare and Medicaid Services ("CMS"), Agency for Health Care Administration, or of a court of competent jurisdiction.

7.5. Entire Agreement.

This Agreement sets forth the entire agreement of the Parties. The parties agree that this Agreement has been drafted by both parties and shall not be construed against or in favor of one party or the other.

OG

SS

7.6. Attorneys' Fees.

In the event of any controversy arising under or relating to the interpretation or implementation of this Agreement or any breach thereof, the prevailing party shall be entitled to payment for all costs and reasonable attorney's fees (both trial and appellate) incurred in connection therewith. The terms of this Section shall survive any termination of this Agreement.

7.7. Waiver.

A waiver by any party of any of the terms of this Agreement shall not be construed as a general waiver by the party and the party is free to reinstate any such term or condition, with or without notice to the other.

7.8 Notice.

All notice and other communications required or permitted hereunder or convenient in connection herewith shall be in writing and shall be deemed to have been given when mailed via certified mail, return receipt requested or sent via electronic delivery as follows:

If to: MSP Recovery
5000 SW 75 Ave, Suite 400
Miami, FL 33155
Attn: E CHAVEZ/A
Phone: ______________
Fax: ECHAVEZ/A
Email: [NAME]@msprecovery.com

If to: Client: ORLANDO GONZALEZ
MMM Holdings, LLC
Attn: ______________
Phone: ______________
Fax: ______________
Email: ______________

or to such other names and addresses as Company or Client shall designate by notice to the other Party hereto in the manner specified in this Section.

IN WITNESS WHEREOF, the parties have hereunto set their hands effective the date first written above.

**CLIENT**

Sign: [signature]

Print: ORLANDO GONZALEZ

Title: PRES.

**MSP Recovery, LLC.**

Sign: [signature]

Print: E CHAVEZ/A

Title: VP of BD

**EXHIBIT A**

**Assignment Addendum**

# FORM OF ASSIGNMENT ADDENDUM

This Assignment Addendum ("**Agreement**") is made this 12 day of JUNE, 2017 ("**Effective Date**") by and between MMM Holdings, LLC., a Puerto Rico limited liability company ("**Client**") and **MSP Recovery,** a Florida Limited Liability Company and/or its assigns ("**MSP Recovery**").

**WHEREAS**, on ______________________, 2017 (the "**Effective Date**") Client and MSP Recovery entered into the Recovery Agreement; and

**WHEREAS**, pursuant to the Recovery Agreement, Client has irrevocably assigned to MSP Recovery all right, title, interest, and ownership of the Assigned Claims; and

**WHEREAS**, Client wishes to assign to MSP Recovery all right, title, interest in and ownership of the Claims arising between the date hereof and the Effective Date.

**NOW THEREFORE**, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree to as follows:

## ARTICLE I

**1.1** Assignment of Claims

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "**Assigned Claims**". The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all documents relating to the Assigned Claims (the "**Assigned Documents**"). The Documents include, but are not limited to, those documents listed on Schedule A to the attached.

## ARTICLE II

**2.1** Successors and Assigns

This Addendum shall be binding upon the successors, legal representatives or permitted assigns of the parties hereto.

**2.2** Incorporation of Recovery Agreement

All terms, representations, warranties and covenants in the Recovery Agreement are incorporated herein and are applicable to the parties to this Assignment Addendum.

IN WITNESS WHEREOF, the parties have hereunto set their hands effective the date first written above.

**CLIENT**

Sign: [signature]

Print: ORLANDO GONZALEZ

Title: Pres.

**MSP Recovery, LLC.**

Sign: [signature]

Print: E CHANCE/H

Title: VP / BD

## SCHEDULE A

1) Contract between government and health plan[3]
2) Contract between health plan and MSO/MAO
3) Contract between MSP and individual provider[4]
4) Contract between individual enrollee and health plan[5]
5) Documentation of services rendered and any payments made for those services
6) Any documentation required to establish liability of third-party payor, including related medical records[6]

[3] Required if relating to Medicare Advantage or Medicaid managed care coverage
[4] Required if provider is assigning its right to recovery
[5] Note: This includes Evidence of Coverage or other statement(s) of coverage
[6] Subject to HIPAA compliance regulations and confidentiality requirements