## HEALTH CARE CLAIMS COSTS RECOVERY AGREEMENT

THIS HEALTH CARE CLAIMS COST RECOVERY AGREEMENT ("Agreement") is made this fourteenth day of September, 2015 ("Effective Date"), between Hygea Health Holdings, Inc., a Florida corporation ("Client") and MSP Recovery, LLC, a Florida limited liability company ("MSP Recovery"). Client and MSP Recovery are also referred to as "parties" or a "party".

### W I T N E S S E T H:

**WHEREAS**, Client operates a Health Maintenance Organization(s), MSO(s), Medical Center(s), and/or is a Physician, and/or, otherwise, and is duly authorized by state, federal, other proper licensing, and/or other administrative agency or agencies to provide or arrange for the provision of care, services, and/or supplies including medications, treatments or other procedures ("**Health Care Services**") to persons who are covered under government healthcare programs (i.e., Medicare and Medicaid) and/or other third party with respect to Medicare or Medicaid services provided by or on behalf of an HMO or other entity that assigns to Client or hires Client to provide care to Medicare or Medicaid insureds.

**WHEREAS**, Client carries out its activities through itself and through various wholly-owned or controlled subsidiaries or affiliates, and it is the specific intent of the Parties to this Agreement that such subsidiaries or affiliates are expressly included within the definition of Client.

**WHEREAS**, it may be that it is necessary for statutory, regulatory or other reasons, including common sense or convenience, to create yet additional entities for the purpose of carrying out the intent of this Agreement, which is to recover for Hygea monies owed by others for services provided by Hygea as described more fully herein, and the Parties hereto agree to cooperate with each other in the establishment or creation of such entities.

**WHEREAS**, The parties acknowledge that some or all of Client's rights to payments for the provision of Health Care Services may derive from legal and/or equitable rights determined by its contractual agreement(s), which include but are not limited to: i) capitation agreements, ii) full risk agreements, and/or iii) other rights, and/or obligations pursuant to state laws, federal laws of any type, and/or nature whatsoever as well as the legal and/or equitable nature of Client's claim(s) that have been paid and/or where there is the possibility that a conditional payment may be made. The Parties further agree that Client's right to recover payments made also include claims for Health Care Services which are billed on a fee for service basis.

**WHEREAS**, MSP Recovery has expertise in identifying primary payors and recovering costs or claims paid by or on behalf of Client in which Client was not or should not have been the primary payor for Health Care Services.

**WHEREAS**, Client desires to assign and transfer to MSP Recovery, all of Client's right, title and interest, including all rights to causes of action and equitable remedies, in and to the claims and potential claims that relate to Medicare or Medicaid (the "Assigned Claims").

WHEREAS, MSP Recovery desires to provide certain services to prosecute and recover amounts owed on the Assigned Claims, in accordance with the terms and conditions of this Agreement.

WHEREAS, MSP Recovery and Client anticipate that the provision of services by MSP Recovery to Client for claims other than those related to Medicare or Medicaid will be addressed by a separate agreement, to be negotiated after MSP Recovery has had an opportunity to review the Client's book of business.

THEREFORE, for and in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree to as follows:

## ARTICLE I

**1.1** **Irrevocable and Absolute Assignment of Claims.**

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for Client that Client has, may have had, or has asserted against any party including, but not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims. By this Agreement, the parties acknowledge and agree to the following: (i) the transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements, and/or any other information Client makes available, assigns, transfers, conveys or delivers to MSP Recovery is proprietary, confidential and the sole property of MSP Recovery or its assigns, and (ii) it shall remain the sole and exclusive property of MSP Recovery, and (iii) shall survive the termination or expiration of this Agreement, notwithstanding anything herein to the contrary.

**1.2** **Client's Representations, Warranties and Covenants.**

A. Client represents, warrants and covenants that as of the Effective Date and throughout the term of this Agreement, that:

(i) it is in good standing in the State of its incorporation and in each state in which it conducts business and/or otherwise has rights to collect or otherwise receive reimbursement and is otherwise duly authorized and empowered to execute and perform it obligations under this Agreement;

(ii) this Assignment of Claims constitutes a valid, legal and binding agreement of Client, enforceable against it in accordance with its terms;

(iii) Client is the sole owner of and has good legal and beneficial title to the Assigned Claims, free and clear of all liens, claims, security interests or encumbrances of any kind or nature whatsoever, including without limitation, pursuant to any factoring or other financing agreement;

(iv) Client has not previously sold or assigned the Assigned Claims, in whole or in part, to any third party;

(v) neither the execution, delivery or performance of this Agreement nor the consummation of the transactions contemplated hereby will violate any law, rule, regulation, order, agreement, or instrument affecting the Client or the Assigned Claim including, but not limited to, under or pursuant to the Medicare Secondary Payor Act and related regulations (the "**MSP Act**") and/or any other legal and/or equitable subrogation rights whatsoever;

(vi) no objections have been received by Client or threatened to Client in respect of the Assigned Claims;

(vii) the Assigned Claim, or any portion thereof, is not subject to, or threatened with, impairment under the Bankruptcy Code or other applicable law;

(viii) no payment has been received by or on behalf of Client in full or partial satisfaction of the Assigned Claims;

(ix) Client has not engaged (and will not engage) in any acts or conduct or made any omissions that will result in MSP Recovery receiving proportionately less in payments or distributions under, or less favorable treatment (including the timing of payments or distributions) for, the Assigned Claims than any other parties holding general unsecured claims or otherwise cause any impairment of the Assigned Claims;

(x) Client agrees to execute and deliver, or to cause to be executed and delivered, all such instruments and documents, and to take all such action as MSP Recovery may reasonably request in order to effectuate the intent and purposes of, and to carry out the terms of, this Assignment of Claims; and

(xi) Client has fully complied with all applicable laws relating to the Assigned Claims.

B. Client and each ultimate beneficial owner of Client, expressly not including the shareholders of Hygea Holdings Corp (the parent entity of Hygea Health Holdings, Inc., the contracting party) on a joint and several basis, shall indemnify and hold harmless MSP Recovery and its investors, owners, directors, officers, employees and agents from and for any and all losses which it or they may suffer due to Client's (a) breach or failure to perform its obligations under this Agreement, (b) breach of any of the representations, warranties and covenants set forth in Section 2 hereof, (c) negligence, (d) fraud, (e) bad faith or (f) violation of law or regulation including, but not limited to, the MSP Act.

### 1.3 Power-of-Attorney.

Client hereby irrevocably appoints MSP Recovery with full power of substitution as its true and lawful attorney and authorizes MSP Recovery to act in Client's name, place and stead, to demand, sue for, compromise and recover all such sums of money which now are, or may hereafter become due and payable necessary to enforce the Assigned Claim and the Client's rights

thereunder or related thereto pursuant to this Agreement. Client agrees that the powers granted by this power-of- attorney are discretionary in nature and exercisable at the sole option of MSP Recovery. Client and MSP Recovery expressly agree that MSP Recovery shall have no obligation to take any action to prove, defend, demand or take any action with respect to the Assigned Claim or otherwise. Moreover, MSP Recovery shall have no obligation to prove, defend, or take any affirmative action with respect to proving the validity or amount of the Assigned Claim.

### 1.4     MSP Recovery's Representations, Warranties and Covenants.

A.     MSP Recovery represents, warrants and covenants that as of the Effective Date and throughout the term of this Agreement, that:

(i)     It is in good standing in the State of its incorporation and in each state in which it conducts business and/or otherwise has rights to collect or otherwise receive reimbursement and is otherwise duly authorized and empowered to execute and perform its obligations under this Agreement;

(ii)     MSP Recovery is in the business of recovery of the types of claims assigned by this Agreement and that it has experience and expertise that renders it proficient in that work;

(iii)     MSP Recovery has no conflict of interest in the performance of its duties under this contract and is aware of no impediment, legal or otherwise, to its efficient performance of the services required hereunder;

(iv)     MSP Recovery has no liens, claims, security interests or encumbrances of any kind or nature whatsoever, that could affect the Client's recovery of its full share of its proceeds of any claims assigned hereunder;

(v)     Neither the execution, delivery or performance of this Agreement nor the consummation of the transactions contemplated hereby by MSP Recovery will violate any law, rule, regulation, order, agreement, or instrument affecting MSP Recovery or the Assigned Claim;

(vi)     MSP Recovery has not been threatened with or advised in any manner of any risk of it to voluntary or involuntary bankruptcy, assignment for the benefit of creditors, or any liability pertaining to it that could jeopardize the Client's receipt of its proportionate share of any proceeds of the Assigned Claims;

(vii)     MSP Recovery will make no assignment, conveyance, transfer, or encumbrance of the Assigned Claims except to a wholly-owned entity, affiliate, subsidiary or other related entity of MSP Recovery. MSP Recovery will not engage in any acts or conduct or make any omissions that will or could have the effect of jeopardizing the Client's receipt of its share of any recovery on the Assigned Claims;

(viii)     MSP Recovery agrees to execute and deliver, or to cause to be executed and delivered, all such instruments and documents, and to take all such action as may reasonably be required or requested request in order to effectuate the intent and purposes of, and to carry out the

terms of agreement; and

   (ix) MSP Recovery has fully complied and will fully comply with all applicable laws relating to the Assigned Claims, the collection of them, and its obligations under this contract.

   B. MSP Recovery and each of its ultimate beneficial owners, on a joint and several basis, shall indemnify and hold harmless Client and its investors, owners, directors, officers, employees and agents from and for any and all losses which it or they may suffer due to MSP Recovery's (a) breach or failure to perform its obligations under this Agreement, (b) breach of any of the representations, warranties and covenants set forth in this Section 1.4 or Section 2 hereof, (c) negligence, (d) fraud, (e) bad faith or (f) violation of law or regulation including, but not limited to, the MSP Act.

## ARTICLE II

### 2.1 Independent Contractor Relationship.

   Client hereby retains MSP Recovery as an independent contractor to perform the cost recovery cost services involving the Assigned Claims. Neither party shall be deemed the employee, agent, partner, or joint venturer of the other. Neither party shall have, or represent to have any authority or capacity to make or alter any Agreement on behalf of the other, to legally bind the other, or to engage in any other action on behalf of the other, except in MSP Recovery's exercise of the power-of-attorney as set forth in Section 1.3 of this Agreement. Neither MSP Recovery nor Client will have or attempt to exercise any control or direction over the methods used by the other to perform its work, duties, and obligations under this Agreement, except as expressly set forth herein. MSP Recovery and Client shall be responsible and remain liable for the actions or omissions of each of their respective employees, agents, consultants and representatives. MSP Recovery and Client each assume full responsibility for their own compliance with any and all applicable laws, ordinances, rules, and regulations in performing their respective obligations under this Agreement.

   It is the intent of the parties to assist each other in the implementation of a system whereby Client and/or any entity it has contracted to recover, shift, and/or bill on a fee for service for all Health Care Services, or any amount it is obligated to make, otherwise, has incurred and/or on behalf of any member or other liability that can be legally and/or equitably collected directly through an assignment and/or as an intended beneficiary either in writing and/or as imposed by law of any kind and/or through Medicare and/or Medicaid rights and/or by State and/or Federal statute(s) and/or administrative codes and/or any other regulations of any kind and/or any other right(s) of any nature whatsoever that exists now or in the future. It is the intent of the parties that MSP Recovery's rights hereunder are vested and that there shall exist the right to impose a lien on any and all cases identified by MSP Recovery pursuant to this Agreement. In the event that any other entity pursuant to this Agreement by the parties, as imposed by law, or by any order of court, then MSP Recovery shall have reduced from its lien the reasonable costs associated with the recovery process for all those cases and/or recovery efforts for which MSP Recovery may assert a lien.

The parties agree that any rights conferred to Client by Medicare Advantage and/or any other plan or right under an MMA or other Medicaid agreement(s) or plans either by statute, contract, and/or any other reason whatsoever will be administered by MSP Recovery so long as it falls outside a payment(s) that is required to be made by Client pursuant to Medicare and/or Medicaid mandated payments(s) and as required by any agreement it has with any entity whereby it is obligated to pay.

2.2     **Term; Automatic Renewal; Termination.**

Unless sooner terminated as set forth in this Section, the term of this Agreement shall be for five (5) years commencing as of the Effective Date and shall automatically renew for additional five (5) year terms thereafter, unless either party provides the other written notice of its desire not to renew at least 90 days prior to the expiration of the then ending five-year term.

**Termination for Cause.** Either party may terminate this Agreement at any time in the event that the other party engages in an act or makes an omission constituting a material breach of any term or condition of this Agreement. The party electing to terminate this Agreement shall provide the other party with not less than thirty (30) calendar days' written notice specifying the nature of the breach. The party receiving the notice shall then have fifteen (15) calendar days from the date of the notice in which to remedy the breach. If such corrective action is not taken within the time specified, then this Agreement shall terminate at the end of the fifteen (15) calendar day period without further notice or demand. The occurrence of a material breach of this Agreement shall include, without limitation, the following:

(i)     The filing of a voluntary petition in bankruptcy or for reorganization under any bankruptcy law, or a petition for the appointment of a receiver of all or any substantial portion of the assets of either party, or any voluntary or involuntary steps to dissolve unless such steps to dissolve are promptly reversed or voided;

(ii)    The consent by either party to an order for relief under the federal bankruptcy laws or the failure to vacate such an order for relief within ninety (90) calendar days from and after the date of entry thereof;

(iii)   The entry of an order, judgment, or decree adjudging a party as bankrupt or insolvent or which appoints or provides for the taking of possession by a receiver, trustee, liquidator, or similar official for any of the property of a party and any such order, judgment, or decree continuing unstayed and in effect for a period of ninety (90) calendar days;

(iv)    The failure by either party to perform any of the material covenants, conditions, or obligations of this Agreement; and

(v)     The failure of any representation or warranty made by either party in this Agreement to remain true.

Effect of Termination. Upon termination of this Agreement, neither party shall have any further obligation hereunder except for (i) obligations accruing prior to the date of termination, and (ii) obligations, promises, or covenants contained herein which are expressly made to extend beyond the term of this Agreement including, without limitation, costs owed to MSP Recovery, recoveries collected and owed to Client, insurance and indemnification obligations, and any other obligations hereunder that survive by their very nature.

### 2.3 Proprietary Information.

In recognition of the proprietary interests of both MSP Recovery and Client, in their respective business operations, MSP Recovery and Client each acknowledge the confidential nature of their relationship and any information or data relating to the business operations, systems, components, customers, prices, methods, plans, programs, results, or other know-hows of the other (collectively referred to as "Trade Secret(s)"). Each party agrees to preserve the confidential nature of these relationships by: (1) using and retaining the Trade Secret(s) of the other in trust and confidence, only for its own internal use and not in any way in competition with the other; (2) not copying (except for internal use), altering, disassembling, or otherwise changing, in any manner whatsoever, the Trade Secrets of the other; and (3) not disclosing any Trade Secret(s) of the other, or permitting the use of any Trade Secret(s) of the other by any unauthorized persons. It is the intent of the parties not to disclose any information as it pertains to Client's members, patients, and/or methods of recovery.

Any and all Trade Secret(s) used to pursue and/or recover monies for Client that Client makes available, assigns, transfers, conveys or delivers to MSP Recovery is proprietary, confidential and the sole property of MSP Recovery or its assigns. Furthermore, any and all Trade Secret(s) shall remain the exclusive property of MSP Recovery and shall survive the termination or expiration of this Agreement, notwithstanding anything herein to the contrary.

### 2.4. Mutual Representations of the Parties.

Each party hereto represents, warrants, and covenants that as of the Effective Date and throughout the term and any renewal term of this Agreement that each is and will remain duly organized, validly existing and in good standing under the laws of the State where it was formed and any other state to which it is subject, has and will retain the requisite power and authority to conduct its business, to enter into this Agreement, and to perform the terms hereto and by proper action has duly authorized, executed, and delivered this Agreement.

## ARTICLE III

### 3.1. MSP Recovery's Obligations, Representation, Investigation and Costs.

For every potential recoverable amount of the Assigned Claims, MSP Recovery, in its sole discretion, will use commercially reasonable efforts to recover amounts of the Assigned Claims to which Client has a right to recover pursuant to the MSP Act and other contractual or equitable grounds available to Client. MSP Recovery will determine the available primary insurance coverage for secured and unsecured claims and pursue those claims accordingly.

MSP Recovery is also cognizant of the importance and applicability of Medicare and/or Medicaid set aside procedures which are utilized when Medicare and/or Medicaid beneficiaries settle claims against third-party tortfeasors but, will still require future medical services and/or supplies, which are the responsibility of the tortfeasor. In this regard, Medicare becomes the secondary payer to the settlement or award, and will not pay for future health benefits related to the injuries that led to the settlement or award. Accordingly, in order to protect the interests of Client, due weight and regard will be placed when negotiating a sum certain that also must cover potential future treatment because Client would be required to pay for the future medical services and/or supplies related to the accident or injury at a future date when the primary payer has already settled its obligation and no longer responsible for future payments.

### 3.2.   Costs.

All costs related to the recovery of amounts for Assigned Claims, are in addition to and separate from the contingency fees payable to MSP Recovery in accordance with this Agreement. Costs include, but are not limited to, fees paid to law firms, filing fees, expert witness fees, consultant fees, deposition fees, witness fees, court reporter fees, long distance telephone charges, photocopy charges, etc. It is anticipated that any attorneys' fees and court costs will be subject to fee-shifting statutes and agreed that any such fees or costs not subject to a fee shifting statute require the written consent of Client before such fees or costs are incurred. MSP Recovery will pay these costs up front, however, once there is a settlement and/or judgment amount recovered, MSP Recovery shall retain and deduct its costs advanced herein prior to disbursing the amounts as described in Article IV below. A closing statement will be provided by MSP Recovery which will include full details of the costs and the amounts obtained.

### ARTICLE IV

### 4.1.   Compensation for MSP Recovery Services.

As compensation for its recovery services, MSP Recovery shall be paid from the "net proceeds" of the recovery (for purposes of this Agreement "net proceeds" means the gross proceeds recovered, including attorneys' fees and costs awarded pursuant to a fee shifting statute or otherwise, less MSP Recovery's costs as described in Section 3.2 above) the following appropriate fee(s):

   i.   MSP Recovery's fee is equal to 50% of the net proceeds of the recovery; and

   ii.   After Client has implemented MSP Recovery's screening protocols to the satisfaction of MSP Recovery which shall not be unreasonably withheld, MSP Recovery's fee shall be reduced to 25% of the net proceeds of the recovery.

It is agreed and understood that this Agreement is entered upon a contingency fee basis, and, if no recovery is made, Client will have no obligation to compensate MSP Recovery the fees set forth in Section 4.1.

Client acknowledges that in performing MSP Recovery's services under this Agreement that MSP Recovery will, at its discretion, contract law firms, lawyers, experts, investigators, claims specialists, to recover amounts owed to Client for the Assigned Claims, including subrogation amounts or any other amounts that are recoverable pursuant to the terms of this Agreement. The arrangements between MSP Recovery and lawyers shall primarily rely on fee shifting statutes; however, any legal fees or compensation not covered by a fee shifting statute(s) shall be considered "costs" pursuant to Section 3.2 and shall be paid first, prior to any distribution of net proceeds as provided for in Article III, Subsection (i) and Subsection (ii), provided that Client's approval has first been granted pursuant to Section 3.2 above. MSP Recovery agrees that it will require any such contracted law firms, lawyers, experts, investigators, claims specialists to agree in writing to permit Client to inspect their books, records, and files related to the performance of obligations under this agreement at any time upon reasonable notice.

## ARTICLE V

### 5.1. Recoveries: Settlements.

Any and all amounts received by MSP Recovery will be reported to Client on a weekly basis via automatic electronic information. Client shall designate an electronic email address to obtain such information. All payments received by MSP Recovery shall be segregated into an account titled MSP Recovery. Client shall have the right to audit the account upon reasonable notice. Client shall receive payments by the 10th of each month for the prior month's activity of all cleared funds minus any costs incurred for any claims and/or expenses during the prior month and less MSP Recovery's fee. Only such Officers and/or Agents of the Client as expressly advised by the Client's CEO and President in writing shall have a signature on the account.

### 5.2. Closing Statement.

Upon a recovery and the conclusion of a particular representation with regard to an Assigned Claim, MSP Recovery shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of MSP Recovery fees retained. MSP Recovery and the Client shall receive a copy of the closing statement. MSP Recovery shall retain a copy of this Agreement and any closing statements for six (6) years after execution of the closing statement. During such period, Client has the right to inspect these documents at reasonable times and upon reasonable notice.

## ARTICLE VI

### 6.1. Default.

Failure of either party to perform any covenant, condition, provision contained within this Agreement within thirty (30) days (or such lesser time as may be, otherwise, set forth in this Agreement) after receipt by such party of written notice of such failure or, in the event, such failure cannot reasonably be cured within such thirty (30) days, failure to diligently and reasonably pursue the cure thereof within such time frame will constitute a Default.

6.2. <u>Remedies.</u>

Upon the occurrence and continuance of a Default and subject to the limitations and waivers otherwise set forth herein, the party not in Default may, at its option and without any obligation to do so, and in addition to any other remedies otherwise set forth in this Agreement or available under law or equity, elect any one or more the following remedies:

(i) **Performance.** Withhold performance of any obligation, including payment obligations, under this Agreement, until such Default is cured; or

(ii) **Cure Default.** Cure such Default and recover the reasonable costs thereof from the party in Default, provided the party not in Default is current in all payments due hereunder; or

(iii) **Injunctive Relief.** Seek injunctive relief to enjoin any act of a party in violation hereof; or

(iv) **Specific Performance.** Seek specific performance of any covenant or obligation of a party hereunder; or

(v) **Termination of this Agreement.** Terminate this Agreement, pursuant to which the section on remedies upon termination shall apply; or

(vi) **Other Available Remedies.** Pursue any other remedy now or hereafter available under the laws or judicial decisions of the State of Florida.

6.3. <u>Governing Law.</u>

The interpretation, construction and enforcement of this Agreement shall be in accordance with the laws of the State of Florida, without regard to any conflict of laws principles.

6.4. <u>Venue.</u>

Any action, whether in law or in equity must be commenced and maintained in Miami-Dade County, Florida.

6.5. <u>Severability.</u>

If one or more of the terms of this Agreement are deemed unenforceable, the other terms shall remain in full force and effect.

6.6. <u>Headings.</u>

The headings in this Agreement are strictly for illustrative purposes and have no legal meaning or force.

### 6.7. Entire Agreement.

This Agreement constitutes a complete and exclusive statement of the terms and conditions of the Agreement and supersedes and replaces any and all prior negotiations, understandings, and agreements with respect to the subject matter of this Agreement. Except as expressly provided in this Agreement, no term, condition, usage of trade, course of dealing or performance, understanding or agreement purporting to modify, vary, explain or supplement the provisions of this Agreement shall be effective or binding upon the parties unless agreed to in writing by the party against whom enforcement is sought.

### 6.8. Force Majeure.

If a Force Majeure Event (as defined below) renders either party unable, in whole or in part, to carry out its obligation under this Agreement, then on such party giving notice and full particulars of such Force Majeure Event in writing to the other party, the obligation of the party giving such notice to provide services under this Agreement, so far as it is affected by such Force Majeure Event, shall be suspended during the period of Force Majeure Event, but for no longer period; and such cause shall, to the extent possible, be remedied with all reasonable dispatch. The term "Force Majeure Event" means acts of God, earthquakes, fire, flood, terrorist event, war, civil disturbance, riots or any other cause not reasonably within control of either party, which through the exercise of due diligence said party is unable to foresee or overcome. In no event shall the term Force Majeure Event include reasonably foreseeable or avoidable operational delays, or any obligation to make payment of money due hereunder for services performed. Neither party shall have the right to terminate this Agreement for a Force Majeure Event.

### 6.9. Counterparts.

This Agreement may be executed in counterparts by the parties hereto, each of which, when so executed and delivered shall be an original, but both counterparts together shall constitute one and the same instrument.

### 6.10. Attorneys' Fees.

In the event of any controversy arising under or relating to the interpretation or implementation of this Agreement or any breach thereof, the prevailing party shall be entitled to payment for all costs and attorney's fees (both trial and appellate) incurred in connection therewith. The terms of this Section shall survive any termination of this Agreement.

### 6.11 Waiver.

A waiver by any party of any of the terms of this Agreement shall not be construed as a general waiver by the party and the party is free to reinstate any such term or condition, with or without notice to the other.

6.12   Assignment.

This Agreement may not be assigned by Client. Notwithstanding the aforementioned, as noted in the Recitals, this Agreement also applies to Hygea's wholly-owned or controlled subsidiaries and/or affiliates. Consistent with the provisions in Section 1.4(A)(vii) above, MSP Recovery may assign this Agreement and all rights hereunder to any wholly-owned entity, affiliate, subsidiary, successor or other related entity of MSP Recovery and shall be binding upon the successors, legal representatives or permitted assigns of the parties hereto.

6.13.  Modification.

This Agreement may not be changed, modified or amended in any respect except by a written instrument signed by the parties.

6.14   Remedies Cumulative.

No remedy herein conferred upon any party is intended to be exclusive of any other remedy, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now hereafter existing at law or in equity or by statute or otherwise. No single or partial exercise by any party of any right, power or remedy hereunder shall preclude any other or further exercise thereof.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement in the manner appropriate to each as of the Effective Date set forth above.

**Hygea Health Holdings, Inc.,**
a Florida corporation

By: _/s/ Manuel E. Iglesias_
Its: CEO and President
Date: 9/14/15
Address: 8750 N.W. 36 Street,
Suite 300
Miami, FL 33176-2254
Phone No.:

**MSP Recovery, LLC,**
a Florida limited liability company

By: _/s/_
Its: EVP
Date: 9/14/2015
Address: 5000 SW 75th Ave,
Suite 400
Miami, Florida 33155
Phone No.: (305) 649-2222