UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 17-CV-23749

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware entity,
     Plaintiff,

v.                                       CLASS ACTION

ACE AMERICAN INSURANCE COMPANY,
a foreign profit corporation,
     Defendant
_____/

## ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

THIS MATTER came before the Court for hearing on Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint [DE 38]. In the Third Amended Complaint [DE 36], pursuant to the Medicare Secondary Payer Act (MSPA), 42 U.S.C. § 1395y, Plaintiff alleges it is entitled to reimbursement from Defendant for payments made on behalf of Medicare beneficiaries. Defendant seeks to dismiss the complaint for lack of standing and for failing to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed a response [DE 39] and Defendant filed a reply [DE 40].

Standing is a threshold question that the Court must address to ensure it has subject-matter jurisdiction over the claim. While the Third Amended Complaint pleads additional facts compared to the original complaint, the allegations still fail to establish Plaintiff has standing as recognized under the MSPA. Therefore, because Plaintiff fails to allege standing to sue and the Court has already provided Plaintiff with four opportunities[1] to cure its defective complaint, the Motion to Dismiss is granted with prejudice.

---

[1] After a motion to dismiss was filed in response to Plaintiff's original Complaint [DE 1], Plaintiff filed its First Amended Complaint [DE 12]. Pursuant to the Court's Order to plead facts rather than a formulaic recitation of the elements [DE 26], Plaintiff submitted a Second Amended Complaint (SAC) [DE 28]. Pursuant to another Order

## I.   RELEVANT BACKGROUND

Plaintiff is an entity whose business model involves obtaining assignments from various entities, including Medicare Advantage Organizations, first-tier entities and downstream entities, to recover reimbursement for payments made for the medical expenses of Medicare beneficiaries that should have been made by a private insurer pursuant to the Medicare Secondary Payer Act (MSPA), 42 U.S.C. § 1395y(B)(3)(A).  [DE 36 ¶ 1, 3].  Plaintiff filed this class action as the assignee of three representative entities—Hygea Holdings Corp., MMM Holdings, LLC, and Health Care Advisor Services—to seek reimbursement from Defendant pursuant to the MSPA. [DE 36 ¶ 5, 6].  Because Plaintiff stands in the shoes of its original assignors, the Court must consider whether the original assignors have standing.  Because this claim is brought under the private cause of action in the MSPA, § 1395y(B)(3)(A), the Court must consider the statutory framework of the MSPA in its analysis.

### A.  The Medicare Secondary Payer Act (MSPA)

In 1965, Congress enacted the Medicare Act to establish a federally subsidized health insurance program for the elderly and disabled.  [DE 36 ¶ 64].  At the time, Medicare provided payment for medical expenses even when Medicare beneficiaries were also enrolled in third-party insurance policies that covered those same costs.  *See MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351 (11th Cir. 2016).

In an effort to reduce costs, Congress passed the MSPA in 1980.  The MSPA provides that Medicare will be the secondary payer, rather than the primary payer, for medical services provided to its beneficiaries when they are also covered for the same services by a private insurer.  42 U.S.C. § 1395y.  Under the MSPA, the private insurer becomes the primary payer, as

---

regarding the deficiencies in the SAC [DE 35], Plaintiff submitted its Third Amended Complaint on January 19, 2018.

defined by the terms in the statute,[2] for medical services.  However, Medicare may make conditional payments when a primary payer cannot be expected to make a payment for a service promptly.  *Id.*  Once notified of its responsibility for a payment, a primary payer must reimburse Medicare for any payment made within 60 days.  *Id.*  In an effort to enforce this scheme, the MSPA created a private cause of action for double damages when a primary plan fails to provide for primary payment.  *See* § 1395y(B)(3)(A).

### B.  Medicare Advantage Organizations, First-Tier Entities and Downstream Entities

In 1997, Congress created the Medicare Part C option to allow Medicare beneficiaries the option of receiving Medicare benefits through private insurers known as Medicare Advantage Organizations (MAOs).  *See* 42 U.S.C. §§ 1395w-21-w-23.  To become an MAO, an insurer must meet certain requirements set by Medicare.  *See* § 1395w-21.  Medicare strictly construes and regulates MAOs to ensure equivalence in all respects with the traditional Medicare program.[3]  *See* § 1395w-23(c).  MAOs contract directly with Medicare to administer benefits for a Medicare beneficiary.  *Humana Medical Plan Inc., v. Western Heritage Ins. Co.,* 832 F.3d 1229, 1235 (11th Cir. 2016).

An MAO may then subcontract directly with third-party providers, known as first-tier entities and downstream entities, to provide health care or administrative services to the Medicare beneficiaries in the MAO's plan.  *See* 42 C.F.R. § 422.2.  First-tier entities and downstream entities include Management Service Organizations (MSOs) and Independent Physician Associations (IPAs).  [DE 36 ¶ 95].  The MAO pays providers by either: (1) entering into a written contract as described above where the MAO agrees to pay certain rates for certain

---

[2] Primary payers are generally defined as a group health plan, a workmen's compensation plan, an automobile or liability insurance plan, or no-fault insurance plan.  *See* § 1395y(B)(2)(A).
[3] An MAO has to abide by coverage determinations provided by Medicare and all disputes go through the traditional Medicare process.  [DE 36 ¶ 73].  MAOs receive a fixed fee per beneficiary directly from Medicare to provide services to each Medicare beneficiary.  [DE 36 ¶ 72].

categories of treatments, or (2) reimbursing a provider that is outside the MAO's network of contracted providers for providing treatment to the beneficiary. *Tenet Healthsystem GB, Inc. v. Care Improvement Plus South Central Ins. Co.,* 875 F.3d 584, 586 (11th Cir. 2017). These first-tier entities and downstream entities "bear the full risk of loss pursuant to their contractual obligations with MAOs." [DE 36 ¶ 94]. Regardless of any relationship an MAO may have with a first-tier entity or downstream entity, the MAO maintains the ultimate responsibility for fully complying with all terms and conditions of its contract with Medicare. *See* 42 C.F.R. § 422.504.

### C. Relevant Allegations of the Third Amended Complaint

Plaintiff as assignee of three representative entities—Hygea, MMM Holdings, and Health Care Advisor Services—alleges Defendant, a private liability insurer, is a primary payer[4] which failed to perform its statutory obligation to reimburse Plaintiff's assignors for medical expense payments made on behalf of Medicare beneficiaries. *See* § 1395y(2); [DE 36 ¶ 5, 6]. The relevant facts that are alleged in Plaintiff's three representative claims are:

1. R.C. and Hygea Holdings Corp. ("Hygea"):  R.C. was enrolled in a Medicare Advantage plan managed by Hygea. [DE 36 ¶ 32]. R.C.'s medical expenses were "subsequently paid" by Hygea. *Id.* Hygea was "charged" $1,227.48. [DE 36 ¶ 36]. Two assignments were subsequently made:  (1) Hygea assigned its rights to recover conditional payments to MSP Recovery, LLC on September 15, 2015; and later (2) MSP Recovery, LLC assigned the rights acquired from Hygea to Series 15-08-19, LLC on June 12, 2017.  [DE 36 ¶ 59, 60].

2. D.G. and MMM Holdings, LLC ("MMM Holdings"):  D.G. was enrolled in a Medicare Advantage plan managed by MMM Holdings. [DE 36 ¶ 25]. D.G.'s medical expenses were "subsequently paid" by MMM Holdings. *Id.* MMM

---

[4] Plaintiff alleges Defendant is a primary payer by virtue of settlements it entered into with Medicare beneficiaries, as well as contractual obligations under its insurance policies to provide coverage to its insureds.  [DE 36 ¶ 4, 5].

Holdings was "charged" $1,892.84. [DE 36 ¶ 29]. Two assignments were subsequently made: (1) MMM Holdings assigned its rights to recover conditional payments to MSP Recovery, LLC on June 12, 2017; and later (2) MSP Recovery, LLC further assigned the rights acquired from MMM Holdings to Series 17-02-554, LLC on June 12, 2017. [DE 36 ¶ 56, 57].

3. <u>E.F. ("E.F.") and Health Care Advisor Services</u>: E.F. was enrolled in a Medicare Advantage plan managed by Health Care Advisor Services. [DE 36 ¶ 17]. E.F.'s medical expenses were "subsequently charged" to Health Care Advisor Services in the amount of $29,883.14. [DE 36 ¶ 17, 22.] Two assignments were subsequently made: (1) Health Care Advisor Services assigned its rights to recover its conditional payments to MSP Recovery, LLC, a different entity than the Plaintiff, on August 28, 2015; and later (2) MSP Recovery, LLC further assigned the rights acquired from Health Care Advisor Services to Series 15-08-27 LLC on June 12, 2017.[5]  [DE 36 ¶ 53, 54].

Plaintiff does not specifically allege if its original assignors are either MAOs or non-MAOs, or first-tier entities or downstream entities in the Third Amended Complaint. The three assignment agreements contain identical broad language describing the assignors as entities that "operate a Health Maintenance Organization, MSO, IPA, Medical Center, and/or is a Physician and/or otherwise . . . provides or arranges for the provision of care, services, and/or supplies including medications, treatments or other procedures to persons covered under [Medicare] and other third party." [DE 36-7; 36-9; 36-11]. In response to the present motion to dismiss, Plaintiff first asserts Hygea and Health Care Advisor Services are MSOs and MMM Holdings is an MAO [DE 39 at 6].

---

[5] Defendant challenges the legitimacy of the assignments. The Court will not reach that issue, and for the purposes of this motion accepts and refers to the Plaintiff's alleged assignors as the "Plaintiff's assignors."

For each representative claim, Plaintiff contends its assignors conditionally paid for medical services that Defendant should have paid as a primary payer under the MSPA. Plaintiff seeks double damages under § 1395y(B)(3)(A) because of Defendant's alleged failure to properly reimburse Plaintiff's assignors. Plaintiff also seeks reimbursement for the amount "billed"[6] to the assignors and class members for medical treatment provided to the Medicare beneficiaries during the time period which Defendant was a primary payer. [DE 36 ¶ 14].

## II.    STANDARD OF REVIEW

Standing is a threshold question that must be addressed prior to, and independent of, the merits of a party's claim because it addresses the Court's jurisdiction to adjudicate the claim. *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To establish standing, the plaintiff has the burden to show: (1) that it suffered an injury-in-fact that is (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of (and not the result of the independent action of some third party not before the court); and (3) that it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 560 (citations omitted). Plaintiff must support each element of standing in the same way as any other matter on which the plaintiff bears the burden of proof, with the manner and degree of evidence required at the successive stages of litigation. *See id.*

Standing requires a careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted. *DiMaio*, 520 F.3d at 1301. A plaintiff lacks standing if the complaint merely sets forth facts from which courts could imagine an injury. *Id.* (citations omitted). The Court should not

---

[6] Defendant contends the Complaint should set forth the amount that was paid, not billed.

speculate concerning the existence of standing; if the plaintiff fails to meet his burden, the Court cannot create jurisdiction by embellishing a deficient allegation of injury. *Id.* (citations omitted).

In evaluating a standing challenge, the Court must first determine if a factual or facial challenge has been raised. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). A facial attack requires the court to determine if the plaintiff has sufficiently alleged a factual basis of subject matter jurisdiction, and the allegations in the complaint are taken as true for the purposes of the motion. *See McElmurray v. Consol. Gov't of August-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2017) (citations omitted). A factual attack, on the other hand, challenges the existence of jurisdiction irrespective of the pleadings, and matters outside of the pleadings such as testimony and affidavits are considered. *Id.* (citations omitted).

Here, the Court will address each representative claim separately either as a factual or facial attack based on the motion to dismiss. Generally, Defendant facially attacks the Third Amended Complaint, arguing a dearth of facts as to each representative claim, including: the name of the MAO; the name of the medical provider; and the relationship between the assignor, the beneficiary, and the provider. [DE 38 at 3-5]. Defendant also makes a factual attack that the assignors are non-MAOs. [DE 38 at 6]. Plaintiff concedes that two assignors are non-MAOs, but asserts that assignor MMM Holdings is an MAO. [DE 39]. Defendant maintains that MMM Holdings is a non-MAO. [DE 40 at 5]. Therefore, the Court's analysis of the claim involving D.G. and MMM Holdings will be on the basis of a factual attack. For the claims involving R.C. and Hygea, and E.F. and Health Care Advisor Services, the Court will proceed on the basis of a facial attack.

### III.  ANALYSIS

Because the Plaintiff asserts standing pursuant to the private cause of action in the MSPA, the Court must first determine who can bring a claim under § 1395y(B)(3)(A). The language creating the private cause of action states:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(B)(3)(A). The Plaintiff's theory is that § 1395y(B)(3)(A) allows for *any private party* to bring a claim. [DE 36 ¶ 86]. Because the statute is silent regarding who may file a claim, courts have interpreted the meaning of "private cause of action" to identify who may assert a claim. The Eleventh Circuit has determined that § 1395y(B)(3)(A) is not a *qui tam* statute that authorizes any private person to sue on behalf of the government. *See MSP Recovery LLC, v. Allstate Ins. Co.,* 835 F.3d 1351, 1363 at n.3 (11th Cir. 2016) (citations omitted). Rather, § 1395y(B)(3)(A) allows a private party to sue only where that party itself has suffered an injury under the statute. *Id.* Therefore, the Court must first consider which persons and entities meet this standard and can bring a claim under § 1395y(B)(3)(A).

Courts have held that Medicare beneficiaries may bring claims under § 1395y(B)(3)(A). *See Stalley v. Orlando Regional Healthcare System,* 524 F.3d 1229, 1234 (11th Cir. 2008); *Glover v. Liggett Group, Inc.,* 459 F.3d 1304 (11th Cir. 2006). While not directly examining standing,[7] *Glover* involved two Medicare beneficiaries who sought reimbursement from a cigarette manufacturer for health care services attributable to smoking. *See Glover,* 459 F.3d at 1305. In dicta, the court noted that the MSPA created a private right of action to "encourage *private parties*" who are aware of non-payment by primary plans to bring actions to enforce Medicare's rights. *See id.* Here, relying on *Glover,* Plaintiff argues that its assignors, which are

---

[7] The issue in *Glover* was whether the individuals could sue the manufacturer without first establishing liability.

8

not Medicare beneficiaries, are encompassed under the term "private parties" and thus may bring a claim.[8] [DE 39 at 7]. However, because *Glover* was not directly dealing with standing and the plaintiffs there were Medicare beneficiaries, the Court can at most read *Glover* as allowing Medicare beneficiaries to bring a claim under § 1395y(B)(3)(A).[9]

Additionally, healthcare providers that initially treated the Medicare beneficiary have been found by the Sixth Circuit Court of Appeals to have standing under § 1395y(B)(3)(A). *See Mich. Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.,* 758 F. 3d 787, 790 (6th Cir. 2014). The plaintiff in *Michigan Spine* was an independent health provider that treated the Medicare beneficiary directly, was paid a reduced amount by Medicare, and filed a lawsuit against the beneficiary's insurer seeking damages under the MSPA. *See id.* While standing was not directly at issue in the case,[10] the Court can at most read *Michigan Spine* as allowing a healthcare provider that initially treated the Medicare beneficiary to bring a claim under § 1395y(B)(3)(A).

Finally, MAOs may have standing under § 1395y(B)(3)(A). *See Humana Medical Plan, Inc., v. Western Heritage Ins. Co.,* 832 F.3d 1229 (11th Cir. 2016). In *Humana,* the court held that MAOs have standing under § 1395y(B)(3)(A) because other areas in the MSPA appeared to treat MAOs similarly as Medicare. *Humana,* 832 F.3d at 1233. In dicta, the *Humana* court referenced *Michigan Spine* to support the proposition that direct health care providers who have not been paid by a primary plan have standing to bring a claim. *Id.* at 1235 (citations omitted).

---

[8] Plaintiff similarly relies on *O'Connor v. Mayor and City Council of Baltimore,* 494 F. Supp. 2d 372 (D. Md. 2007) to illustrate its assignors have standing. As in *Glover,* the plaintiff in *O'Connor* was a Medicare beneficiary. Here, Plaintiff's assignors are not Medicare beneficiaries.
[9] In *Stalley v. Catholic Health Initiatives,* 509 F.3d 517, 526 (8th Cir. 2007), the court found the congressional intent behind the private cause of action was to provide Medicare beneficiaries standing to sue their primary insurers for expenses Medicare had already paid and to allow beneficiaries to vindicate their own contractual or tort interests. The court also noted that beneficiaries suffer an injury because a conditional payment made by Medicare leaves the beneficiary with a less than final settlement of their liability to the provider. *Id.*
[10] In *Michigan Spine,* the court was determining whether the provider could sue a primary insurer that had denied coverage because of a pre-existing condition, not on the basis of Medicare eligibility.

Plaintiff relies on *Humana* to support its theory that non-MAOs and, in particular, "private parties" generally have standing.[11]  [DE 39 at 7].  However, *Humana* only held that the private cause of action was available to MAOs.  *See Humana*, 832 F.3d at 1233.  Even considering the court's dicta, *Humana* at most allows direct providers of medical services to bring claims.[12]

Therefore, based on the Court's review of the statute and precedent, there is a two-prong test to establish standing to bring a claim under § 1395y(B)(3)(A).  First, the plaintiff must be either: (1) a Medicare beneficiary; (2) an MAO; or a (3) direct healthcare provider to the Medicare beneficiary.  Second, the plaintiff must show: (1) that it suffered an injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable decision.  *See, e.g., Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Humana Medical Plan, Inc., v. Western Heritage Ins. Co.*, 832 F.3d 1229 (11th Cir. 2016); *Glover v. Liggett Group, Inc.*, 459 F.3d 1304 (11th Cir. 2006); *Mich. Spine & Brain Surgeons PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787 (6th Cir. 2014).

In this case, because Plaintiff is the assignee of various claims, the Court must first determine whether Plaintiff's original assignor in each representative claim is: (1) a Medicare beneficiary; (2) an MAO; or (3) a direct healthcare provider to the Medicare beneficiary in order to have standing under § 1395y(B)(3)(A).  If not, the Plaintiff's assignors are not within the established entities that courts have found have standing and the inquiry ends there.

## A. CLAIM 1: HYGEA AND R.C.

In this claim, Hygea is Plaintiff's original assignor.  Defendant contends the Third Amended Complaint fails to allege the relationship between R.C., Hygea, and the medical provider which treated R.C.  Because this constitutes a facial attack on Hygea's standing, it is

---

[11] Plaintiff disappointingly misquotes *Humana* to suggest that decision supports the theory that the cause of action was available to any "private parties." [DE 39 at 7].  Plaintiff ignores that the Eleventh Circuit was implicitly supporting the proposition that direct providers had standing under § 1395y(B)(3)(A).  *Humana*, 832 F.3d at 1235.
[12] To demonstrate that it has standing, Plaintiff also relies on *In re Avandia*, 685 F.3d 353 (3d Cir. 2012).  However, that decision, like *Humana*, only held that MAOs had a private right of action under the MSPA.

only necessary to look to the Third Amended Complaint to see if Plaintiff has sufficiently alleged whether Hygea is an MAO or was the direct healthcare provider to R.C. in this claim. *See McElmurray,* 501 F. 3d at 1251 (explaining that facial attacks require the court to merely look at the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction).

In the Third Amended Complaint, Plaintiff alleges that R.C. was enrolled in a Medicare Advantage plan "managed by Hygea." R.C.'s medical expenses were "subsequently paid by Hygea" and Hygea was "financially responsible" for R.C. Hygea was charged $1,227.48. Plaintiff's assignment agreement describes Hygea expansively as operating "a Health Maintenance Organization, MSO, IPA, Medical Center, and/or is a Physician and/or otherwise . . . provides or arranges for the provision of care, services, and/or supplies including medications, treatments or other procedures to persons covered under [Medicare] and other third party."

The Third Amended Complaint fails to allege facts that Hygea is either an MAO or a direct healthcare provider to R.C. in this claim. The Third Amended Complaint simply states Hygea managed the plan in which R.C. was enrolled and was also financially responsible for R.C. In the Third Amended Complaint's attached exhibits regarding R.C.'s services, Hygea is not listed anywhere as the provider of medical services to R.C. In fact, only an urgent care center appears as an apparent provider. [DE 46-3]. Additionally, Plaintiff's own assignment agreement does not describe Hygea as either an MAO or the direct healthcare provider of services to R.C. in this claim. A court may not speculate concerning the existence of standing; a plaintiff lacks standing if the complaint merely sets forth facts from which courts could imagine an injury. *See DiMaio,* 520 F.3d at 1301. Therefore, because Plaintiff has failed to allege Hygea

is either an MAO or a direct healthcare provider to R.C. for this claim, Hygea has no standing to bring a claim under § 1395y(B)(3)(A).[13]

## B. CLAIM 2: MMM HOLDINGS AND D.G.

In this claim, MMM Holdings is Plaintiff's original assignor. In addition to the lack of facts alleged in the Third Amended Complaint, Defendant contends that MMM Holdings is not an MAO. Because this is a factual attack on MMM Holdings' standing, the Court may consider matters outside of the pleadings to determine if MMM Holdings is in fact an MAO. *See McElmurray*, 501 F. 3d at 1251 (explaining that factual attacks allow the court to consider matters outside the pleadings, such as testimony and affidavits).

In the Third Amended Complaint, Plaintiff alleges that D.G. was enrolled in a Medicare Advantage plan "managed by" MMM Holdings. D.G.'s medical expenses were "subsequently paid" by MMM Holdings. MMM Holdings was "charged" $1,892.84. Plaintiff's assignment agreement broadly describes MMM Holdings as operating "a Health Maintenance Organization, MSO, IPA, Medical Center, and/or is a Physician and/or otherwise . . . provides or arranges for the provision of care, services, and/or supplies including medications, treatments or other procedures to persons covered under [Medicare] and other third party."

The Third Amended Complaint fails to allege MMM Holdings is an MAO. Plaintiff first states MMM Holdings is an MAO based in Puerto Rico in its response to the second motion to dismiss. [DE 39 at 6]. In resolving this factual issue, the Court reviewed the Centers for Medicare & Medicaid Services website, which provides an updated list of MAOs.[14] The list was

---

[13] Based on the parties' filings, Hygea seeks reimbursement for an amount charged due to the terms of its private contract with an MAO called Wellcare. Thus, it appears Hygea was not directly injured under the MSPA but because of its relationship with Wellcare. Its claim must instead be determined by reference to the written contract. *See Provident Care Mgmt., LLC v. Wellcare Health Plans Inc.*, Case No. 16-cv-61873-BB, (S.D. Fla. Feb. 1, 2018) ("A contract provider's claims are determined entirely by reference to the written contract, not the Medicare Act.")

[14] Centers for Medicare & Medicaid Services, https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/MCRAdvPartDEnrolData/MA-Plan-Directory-Items/MA-Plan-Directory.html (last visited March 5, 2018).

most recently updated in February 2018 and MMM Holdings is not listed.  However, an entity

with a similar name "MMM Healthcare LLC" is listed.  At the hearing on the motion, Plaintiff

represented that MMM Holdings is the same entity as "MMM Healthcare."  However, despite

various opportunities to defeat this factual attack, Plaintiff's Third Amended Complaint fails to

allege any facts or provide evidence to show that the two entities are one and the same.  As

previously stated, the court cannot speculate concerning the existence of standing.  *See DiMaio*,

520 F.3d at 1301.  Based on the Court's review, it is unclear what type of entity MMM Holdings

is and whether it has any relationship to this claim or Medicare.  Therefore, because MMM

Holdings is not listed on the website as an MAO and the Medicare website is a source which

cannot be reasonably questioned, the Court takes judicial notice that MMM Holdings is not an

MAO and thus lacks standing under § 1395y(B)(3)(A).  *See* Fed. R. Evid. 201.

### C.  CLAIM 3: HEALTH CARE ADVISOR SERVICES AND E.F.

In this claim, Health Care Advisor Services is Plaintiff's original assignor.  Defendant

contends the Third Amended Complaint fails to allege the relationship between E.F., Health Care

Advisor Services, and the medical provider which treated E.F.  Because this constitutes a facial

attack on Health Care Advisor Services' standing, the Court will merely look to the pleadings to

see if Plaintiff has sufficiently alleged whether Health Care Advisor Services is an MAO or was

the direct healthcare provider to E.F. in this claim.  *See McElmurray,* 501 F. 3d at 125.

In the Third Amended Complaint, Plaintiff alleges that E.F. was enrolled in a Medicare

Advantage plan "managed by" Health Care Advisor Services.  E.F.'s medical expenses were

"subsequently charged" to Health Care Advisor Services.  Health Care Advisor Services was

charged $29,883.14.  Plaintiff's assignment agreement describes Health Care Advisor Services

as operating "a Health Maintenance Organization, MSO, IPA, Medical Center, and/or is a

Physician and/or otherwise . . .  provides or arranges for the provision of care, services, and/or

supplies including medications, treatments or other procedures to persons covered under [Medicare] and other third party."

The Third Amended Complaint fails to allege Health Care Advisor Services is either an MAO or a direct healthcare provider to E.F. in this claim. The Third Amended Complaint simply states Health Care Advisor Services managed the plan in which E.F. was enrolled and that E.F.'s medical expenses were charged to Health Care Advisor Services. In the attached exhibits regarding E.F.'s medical services, Health Care Advisor Services is not listed and only various hospitals, clinics, and doctors appear as providers. Additionally, Plaintiff's own assignment agreement does not describe Health Care Advisor Services as either an MAO or the direct healthcare provider of services to E.F. in this claim. Again, the Court may not speculate regarding standing. *See DiMaio*, 520 F.3d at 1301. Therefore, because Plaintiff has failed to allege Health Care Advisor Services is either an MAO or a direct healthcare provider to E.F. for this claim, Health Care Advisor Services lacks standing to bring a claim under § 1395y(B)(3)(A).

## IV.    CONCLUSION

Plaintiff has failed to allege that its original assignors have standing under § 1395y(B)(3)(A). Plaintiff's theory is that § 1395y(B)(3)(A), by virtue of providing a private cause of action, provides standing to *"all private parties."* However, courts have determined that § 1395y(B)(3)(A) is not a *qui tam* statute; only Medicare beneficiaries, MAOs, and providers that directly treated the Medicare beneficiaries have standing under § 1395y(B)(3)(A).

Despite four attempts to plead, and even after standing was challenged in the first motion to dismiss [DE 10], Plaintiff has still failed to allege that any of its assignors are Medicare beneficiaries, MAOs, or medical providers that directly treated the alleged Medicare beneficiaries. In fact, the four template complaints are all-encompassing and overly broad. Each complaint is saddled with an overabundance of conclusory statements obscuring any facts to

14

support them.  The Court's role is to adjudicate the claim with which it is presented; it is not to put a complaint in a colander, shake out the excess, and see if what remains is a potential claim for a plaintiff.

Therefore, because Plaintiff has failed four times to allege facts to show standing, the Court can only assume the facts do not exist and the assignors do not have standing under § 1395y(B)(3)(A).  As a result, the Court lacks subject-matter jurisdiction to hear this case.  The Court need not allow an amendment when there has been "repeated failures to cure deficiencies" by amendments previously allowed.  *Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1014 (11th Cir. 2005) (citations omitted).   Therefore, because Plaintiff has failed four times to demonstrate standing, the Court finds it is in the best interest of judicial economy to grant the motion with prejudice.  Accordingly, it is

ORDERED THAT

(1) The Motion to Dismiss [DE 38] is **GRANTED WITH PREJUDICE.**

(2) All pending motions are **DENIED AS MOOT.**

(3) This case is **CLOSED.**

DONE and ORDERED in Miami, Florida, this ___ day of March, 2018.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

CC: Counsel of Record

15