**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 17-23749-CV-SEITZ

MSP RECOVERY CLAIMS, SERIES LLC,

v.

ACE AMERICAN INSURANCE COMPANY,

     Defendant.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

     This matter is before the Court on Plaintiff's Motion for Class Certification [DE 136]. Defendant opposes the Motion [DE 146], and Plaintiff has filed a Reply [DE 149]. The Court has considered the foregoing, the record, and the applicable law. In addition to failing to establish standing, Plaintiff fails to propose a class definition that both avoids fail-safe issues and satisfies Federal Rule of Civil Procedure 23. Therefore, Plaintiff's Motion is DENIED.

### I.  Background[1]

     The Medicare Secondary Payer ("MSP") Act ensures that Medicare funds do not cover costs that should be paid by private insurers. 42 U.S.C. § 1395y(b)(2)(B)(ii). This situation arises where a person is covered by both Medicare and private insurance. As relevant here, for instance, a Medicare Advantage[2] Organization ("MAO") plan beneficiary might be injured on commercial property

---

[1] The Eleventh Circuit has aptly summarized the background of this case in an earlier appeal [DE 73 at 11-13]. Thus, the Court focuses on the facts most pertinent to this Motion.
[2] Medicare Advantage is an alternative way for Medicare beneficiaries to receive coverage. Instead of through a plan administered directly by the government, coverage is through a private insurer approved by Medicare.

where an insurer ultimately accepts responsibility for the medical expenses.  In such cases, the MAO plan or one of its contracted providers (often termed downstream or first-tier entities) might have to pay first to cover immediate medical needs (a "conditional payment" under the Act).  Later, following the individual's settlement with the commercial insurer, the MAO plan is entitled to seek reimbursement of its conditional payment from the commercial insurer – now deemed the "primary payer" under the Act by virtue of the settlement.

Plaintiff is not an injured individual, an MAO Plan, or a downstream or first-tier entity.  Plaintiff is simply an aggregator of MSP Act claims.  Plaintiff allegedly gains title through assignment to possible unreimbursed conditional payment claims to collect on them.  Plaintiff functions, in a sense, as a privatized class action vehicle for MSP Act claims – not surprising, given Plaintiff's name.  It acquires by assignment MSP Act claims from individual entities who might be entitled to reimbursement, but who have deemed individual pursuit of claims uneconomical, or otherwise find it undesirable.  As one might imagine, Plaintiff or one of its affiliates is a frequent litigator in federal courts.

In this instance, Plaintiff wishes to stand in the shoes of a downstream entity, Hygea Health Holdings, Inc., with the sole representative claim in this action relating to a settlement between R.C. and Defendant. The essential facts about the claim are undisputed.  R.C. was a Medicare beneficiary.  R.C. chose to receive Medicare services through a MAO instead of directly from the government.  The MAO plan was allegedly managed by Wellcare.  Wellcare, in turn, contracted

with All Care Management Services to provide medical services to Wellcare beneficiaries such as R.C.  On September 5, 2012, R.C. cut his forearm on a supermarket's display, and was billed less than $270 by a West Palm Beach urgent care facility for his injuries. On May 2, 2013, R.C. settled for $1000 any liability regarding the bodily injuries, with Defendant and Defendant's insured, Pepsi Co., through Defendant's third-party claims administrator ("TPA"), Sedgwick Claims Management Services [DE 152 at 1; 161 at 1-2].  While not clear, after R.C.'s injuries, the bill for those services appears to have been paid out of an account managed by Wellcare and the parties contest which legal entity assumed the financial liability for the medical services rendered to R.C.

At this point Plaintiff finally becomes involved. At some later time, it is alleged the rights and title to any potential MSP Act claims, including R.C.'s, became Hygea claims, which Hygea assigned to Plaintiff to recoup conditional payments from primary plans.  As a result of the alleged assignment, Plaintiff asserts a private cause of action under the MSP Act's provisions, namely 42 U.S.C. § 1395y(b)(3)(A), on behalf of itself as an assignee of Hygea and other downstream entities.  Plaintiff contends that by entering settlements (like R.C.'s with Sedgwick described above), Defendant became the "primary plan" under 42 U.S.C. § 1395y(b)(3)(B)(ii) and, thus, liable for reimbursement of conditional payments made by MAOs or affiliated entities (in R.C.'s case, by Hygea) on the underlying medical

3

claims.[3]  In addition to claiming Defendant is liable on the underlying R.C. claim, Plaintiff contends that hundreds of other similar claims exist against Defendant for which Plaintiff does not hold title.

## II.  Legal Standard

### A.   Medicare Secondary Payer Act

As noted above, an insurer other than a beneficiary's MAO might ultimately be deemed responsible as the primary plan when it assumes liability through a judgment or settlement.  Specifically, Section (2) ("Medicare secondary payer"), Clause (B) ("Conditional Payment"), Paragraph (ii) ("Repayment Required") of the MSP Act states,

> [A] primary plan...shall reimburse...if it is demonstrated that such primary plan has or had a responsibility to make payment...[which] may be demonstrated by a judgment [or] a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan.

42 U.S.C. § 1395y(b)(2)(B)(ii).  The primary plan must reimburse the conditional payment within 60 days.  42 U.S.C. §§ 1395y(b)(2)(B)(ii), 1395w-22(a)(4).  If a primary payer fails to do so, Medicare or a covered private entity may sue for twice the amount of the conditional payment, provided certain conditions have been met and certain defenses do not apply.  42 U.S.C. §§ 1395y(b)(2)(B)(iii), 1395y(b)(3)(A).

---

[3] The Complaint also alleges a group of claims where liability arose due to Defendant's no-fault insurance policies, but the Motion does not identify or seek certification of a related class.

B.    Class Certification

As an "invention of equity," class actions serve many useful purposes, including promoting efficient use of judicial resources. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985).  In addition, this procedural vehicle "may permit the plaintiffs to pool claims [that] would be uneconomical to litigate individually." *Id.* at 809.  Class certification, however, is an "exception to the usual rule" that parties litigate on behalf of themselves. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted).  The burden of proof establishing class certification rests with the putative class advocate. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003) (citation omitted).  District courts have broad discretion whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992) (citation omitted).

As with any federal action, a plaintiff must have Article III standing, which is demonstrated by showing it "(1) suffered an injury-in-fact (2) that is fairly traceable to the defendant's conduct and (3) is redressable by a favorable judicial decision." *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1217 (11th Cir. 2020) (citation omitted).  Specifically under the MSP Act, an assignee has standing if "(1) its ultimate assignor...suffered an injury-in-fact, and (2) [the assignor's] claim arising from that injury was validly assigned." *Id.* (citation omitted).  In the class action context, standing lays the groundwork for determining "whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Prado-Steiman v. Bush*, 221 F.3d

5

1266, 1279 (11th Cir. 2000).  Plaintiff must do more than merely allege facts.  *See id.* at 1280 (noting that "[t]his inquiry is necessarily fact-specific and requires factual proffers, through affidavits and other evidentiary documents").

Next, the proposed class must be "adequately defined" and "clearly ascertainable." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302-03 (11th Cir. 2021). Inadequate class definition would involve "vague or subjective criteria." *Id.* at 1302.  A proposed class is clearly ascertainable if its membership is "capable of being determined." *Id.* at 1303 (interior quotation omitted).  While these terms ("adequately defined" and "clearly ascertainable") are separate, the inquiry is "collapsed" into one. *Id.* at 1302 (citation omitted).

If a plaintiff carries its burden on the above prerequisites, a plaintiff must, then, meet the requirements of Federal Rule of Civil Procedure 23. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019) (citation omitted). Specifically, all four of Rule 23(a)'s requirements must be met. *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (citations omitted).

Rule 23(a)'s requirements include the following:

(1) the class is so numerous that joinder of all members is impractical [("numerosity")];

(2) there are questions of law or fact common to the class [("commonality")];

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [("typicality")]; and

(4) the representative parties will fairly and adequately protect the interests of the class [("adequacy")].

Fed. R. Civ. P. 23(a).

In addition to Rule 23(a), one of Rule 23(b)'s requirements must be met as well. *Little*, 691 F.3d at 1304. In this case, Plaintiff argues it has satisfied Rule 23(b)(3). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Under Rule 23(b)(3), the predominance requirement is "perhaps the central and overriding prerequisite." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1278 (11th Cir. 2009) (citation omitted). To satisfy predominance, issues that are subject to class-wide proof must predominate over those requiring individualized proof. *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (citations omitted). This is a "far more demanding" requirement than commonality under Rule 23(a)(2). *Id.* (citation omitted). Rule 23(b)(3) also offers four specific but non-exclusive considerations pertinent to the analysis, which include the class members' interests in controlling litigation, other related ongoing litigation, forum consolidation tradeoffs, and case management difficulties. *Vega*, 564 F.3d at 1277.

The court must conduct a "rigorous analysis" to determine whether the party proposing class certification has met its burden. *See Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1169 (11th Cir. 2010) (citation omitted). This is not a pleading standard; Rule 23 must be satisfied with evidence. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). This analysis may

"'entail some overlap with the merits of the plaintiff's underlying claim," but the court may not engage in "free-ranging merits inquiries" at this stage. *Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 465-66 (2013) (citations omitted). A court may consider the merits only "to the degree necessary" to analyze Rule 23. *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006) (citation omitted).

### III. Parties' Positions

Plaintiff alleges that Defendant systematically and routinely fails to reimburse MAOs or related entities for conditional payments under the MSP Act. With reference to the online Centers for Medicare & Medicaid Services MA Plan Directory, Plaintiff claims that 967 MAOs, along with hundreds of first-tier and downstream entities, have claims against Defendant. Plaintiff contends it can quickly identify these claims, using a computer-run proprietary set of protocols, if it can be permitted to analyze Defendant's data, any of its TPAs' settlement data, and putative class members' data.

Plaintiff states that proof of the class member claims can be accomplished by common evidence. Namely, Plaintiff's search protocols will eliminate need to litigate individualized liability. In short, when the matching system is employed, whoever is on the resulting list is entitled to relief because it represents settled liability claims with MAO plan beneficiaries where the class member made a reimbursable payment. Finally, as detailed further below, Plaintiff argues that it has standing and otherwise satisfies Rule 23's requirements.

Defendant challenges every aspect of Plaintiff's Motion.  It rejects standing, charges that Plaintiff has improperly expanded and simultaneously defined a fail-safe class, and argues that Plaintiff has failed to satisfy any requirement of Rule 23. Defendant further contends that Plaintiff's approach of relegating to its software the Court's role of determining liability is improper and has been rejected by other courts.

### IV.  Court's Basis of Decision

As explained more fully below, Plaintiff fails to carry its burden establishing standing.  Even if it had, Plaintiff runs into a pair of related issues. Under the operative class definition in the Motion, the proposed class fails under Federal Rule of Civil Procedure 23 because it does not include members with questions susceptible to common proof, among other issues.  On the other hand, if the Court allowed an alternative definition like that in the Fifth Amended Complaint in order to avoid Rule 23 issues, fail-safe issues arise.  One of these two outcomes is inescapable.  Thus, the Motion fails because the class definition either requires liability determination (if the Court reverted to the Complaint's definition) or results in individualized litigation that fails to satisfy Rule 23 (under the Motion's operative definition) and, as a result, steals any class action benefit for putative class members, Defendant, or the Court.

A.      Class Definition Evolution

These conclusions result from, first, reviewing closely an evolution of the proposed class definition, from the Fifth Amended Complaint, to the following operative definition in the Motion for Class Certification:

> All MAOs and downstream entities that provide benefits under Medicare Part C, in the [U.S.] and its territories, who made conditional payments as secondary payers for medical items and services on behalf of their beneficiaries who had entered into settlements with the Defendant under a third-party insurance coverage, such as bodily injury insurance coverage.

[DE 136 at 12].  Three differences stand out in a comparison of the two definitions. First, the Motion's definition limits eligible entities from the outset.  While the Complaint's definition starts with "[a]ll non-governmental organizations and/or their assignees" and later mentions MAO plans, the Motion's definition is limited to "[a]ll MAOs and downstream entities."  *Cf.* DE 107 at 4 *with* DE 136 at 12.  Second, the Complaint's definition does a better job avoiding legal terms, such as secondary payers or conditional payments.  Third, the Complaint's class concerns only "beneficiaries for which Defendant has not reimbursed in full or part," whereas the Motion's class definition includes no such limitation.  *Cf.* DE 107 at 4 *with* DE 136 at 12.

Plaintiff states that the definitional changes were an effort to avoid fail-safe issues and "streamline and clarify class membership" [DE 136 at 12 n.1]. Plaintiff offers little further explanation for the changes.  Along with Plaintiff's prior stated positions, however, the changes can be analyzed to clarify who is intended to comprise the class. As explained below, the result is a class definition

10

whose qualifying phrases must be read as limitations on the intended class, in order to avoid it reaching well beyond MSP Act claims.

First, the introduction makes clear that this a Medicare Advantage-focused action with MAOs and related entities front and center.  By omitting "and/or assignees," Plaintiff has eliminated the possibility that any entity like itself is an intended member.  Then, the definition gets to the heart of it, focusing on "conditional payments [made] as secondary payers for medical items and services on behalf of [members'] beneficiaries."  Setting aside use of legal terms, this phrase makes clear that the intended group is those who have made a conditional payment under Paragraph (2)(B)(ii) of the MSP Act and have or have not been reimbursed.  This is a departure from the Complaint's definition, which only focused on unreimbursed claims.  Next, the Motion's definition is limited further to settlements.  This eliminates other instances (such as judgments).  Finally, the definition identifies Defendant's third-party insurance coverage as the basis of the settlement, and makes clear by the "such as" phrase that these are settlements concerning bodily injury.

Given this understanding of the class definition, the Court turns to Defendant's challenges to class certification.

B.      Standing

Defendant has two parts to its standing challenge.  First, quite unhelpfully, Defendant simply cross-references eight pages of its pending Motion for Summary Judgment [DE 142 at 12-19].  Those pages attack the merits of nearly every element

of Plaintiff's claim.  It challenges whether Wellcare made any conditional payment on behalf of R.C., whether Hygea reimbursed Wellcare in part or in full, whether Defendant failed to make any obligated payment, whether Hygea owns Wellcare's right to sue, and whether that right was duly assigned to Plaintiff.  This scattergun challenge effectively invites a full-fledged merits analysis of Plaintiff's claim, which the Court declines.  It will not delve into the merits of Plaintiff's allegations any more than necessary to resolve the Motion for Class Certification.  *See Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006).

There are several noteworthy points that relate to this broad challenge. First, to establish standing in its Motion, Plaintiff cites just a few pieces of evidence. It cites the deposition testimony of Manuel Iglesias, former CEO of Hygea, to argue that Hygea incurred a financial liability for R.C.'s claim [DE 136 at 17].  Plaintiff also contends that the claim was validly assigned, proffering the Claims Costs Recovery Agreement between Plaintiff and Hygea, Participation Agreements between Wellcare and All Care, and its own Operating Agreement [DE 139-8]. Plaintiff has also submitted a purported Medicare Query Form to tie R.C. to a settlement with Defendant [DE 139-7].

The proffered evidence leaves Plaintiff's standing in doubt.  The record is not clear upon what record evidence Plaintiff relies for establishing an injury-in-fact to Hygea.  *See QBE Holdings*, 965 F.3d at 1217 (describing injury-in-fact as the first of two prongs for standing in MSP Act cases).  It appears to rely on Iglesias's testimony, but that testimony says less than what Plaintiff claims.  While Iglesias

testifies generally about Hygea's financial liability of claims *like* R.C.'s, he also testifies that he has no specific evidence relating to R.C.'s claim, as revealed in this exchange:

> Q:...  Do you have any information to support the allegation that Hygea made a payment or was financially responsible for a payment with respect to the R.C. claim?
>
> Mr. Rivero:    Objection.  Asked and Answered.
>
> A:      You know, I have no physical data of anything.  I was the CEO of a $350 million company.  That type of data was in the entrails of the company... I do not have any paperwork to validate anything we've been talking about, and that's true about every one of your questions about whether I have the paperwork.  I don't.
>
> Q: Do you know who would have the paperwork to validate these allegations?
>
> A: I have no idea.

[DE 139-1 at 122-23].  Again, Plaintiff has the obligation as movant in class certification, and it has not made clear how it intends to establish this injury.  If it is upon this testimony, which is what Plaintiff has cited in support of establishing an injury for standing [DE 136 at 17], then standing fails.

Plaintiff also shirks its burden as to demonstrating assignment.  *See id.* While it has referred to several corporate agreements in support thereof, it makes no analysis in its Motion of those 146 pages of agreements [DE 139-8].  Thus, Plaintiff has not carried its burden in this respect, either.

Even if Plaintiff had satisfied injury and assignment standing requirements, Defendant's second standing challenge – which is as terse as its first was unspecified – creates an additional issue for Plaintiff.  The second challenge points out Plaintiff is a poor representative because Defendant's defenses are

unique to Plaintiff's assigned claim.  Defendant raises several defenses in its Answer.  Among others that might be generally applied to more than R.C.'s claim, Defendant (a) challenges the validity of Hygea's assignment; (b) points out that the claim fails to satisfy the threshold amount under Paragraph (9) of the MSP Act; (c) contends Hygea failed to seek payment from Defendant prior to bringing suit; and (d) alleges a deductible with the insured obviates any payment [DE 109 at 12-13].

Plaintiff is correct that individual issues and its assignee status do not *per se* disqualify it as a class representative.  In this instance, however, where (as detailed below) Plaintiff already struggles to identify commonality with putative class members, these additional issues certainly make it a less appealing one.  As noted above, Plaintiff removed any reference to assignees from the Complaint's class definition to the Motion's definition.  Thus, Plaintiff intends on being the only holder of claims by assignment representing a class that is intended to be exclusively those with directly held claims.  While Plaintiff might be entitled to stand in the shoes of Hygea, its solo assignee status and Defendant's specific defenses to R.C.'s claim hinder Plaintiff's efforts to argue that "a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Prado-Steiman*, 221 F.3d at 1279.

C.    Class Definition and Ascertainability

Next, the Court considers whether the class is "adequately defined and clearly ascertainable." *Cherry*, 986 F.3d at 1302-03.   As part of this analysis, the

Court, first, addresses Defendant's arguments regarding overinclusion and class broadening.

### 1.     Class Broadening and Over-Inclusion

The Motion's definition is broader than that in the Fifth Amended Complaint, but it does not add defendants, new theories of liability, or types of claims.  *Cf. Bouton v. Ocean Properties, Ltd.*, 322 F.R.D. 683, 692-94 (S.D. Fla. 2017) (rejecting class with new defendant-entities and theories of liability); *Lawrence v. S. Fla. Racing Ass'n, LLC*, No. 18-CV-24264-UU, 2019 WL 3890314, at *5 (S.D. Fla. June 28, 2019) (same regarding additional entities and types of claims); *Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, 347 F. Supp. 3d 1207, 1232 n.12 (S.D. Fla. 2018) (same regarding expansion to include users in addition to product purchasers).

Nonetheless, the definition has overinclusion issues.  First, by no longer limiting the definition to putative class members who have not been reimbursed, the definition includes those who have been reimbursed – uninjured parties.  For example, the operative definition would include an MAO who Defendant was required to reimburse as a secondary payer, and Defendant did so in the normal course of business.  Such MAO has no purpose being in the class.  *See Taylor v. Screening Reports, Inc.*, 294 F.R.D. 680, 689 (N.D. Ga. 2013) (rejecting class that included customers who had no issue with defendant's service as violating Rule 23(a)'s commonality requirement, allowing motion renewal where a potential narrower subclass existed).

Second, the inclusion of an MAO's "downstream entities" creates overinclusion issues in practice. Granted, the simple term is not as unbridled as *Walewski v. Zenimax Media, Inc.*, 502 Fed. App'x 857, 861 (11th Cir. 2012) (noting that rejected class would have included "all persons or entities nationwide, who purchased any version of the game, presumably from anyone, anywhere, at any time – whether or not they ever were injured"). But, as a practical matter, including such entities creates uncertain reach of the class. Such entities could be a physicians practice group, a health services organization containing such a group, or any variety of organizations an MAO might contract with on behalf of its MAO beneficiaries for medical services.

Complicating matters further, between an MAO and any given downstream entity, an agreement could contemplate varying understandings of which entity assumes the financial risk (and, thus, has the right to seek reimbursement) in the event of an MSP Act claim. Adding yet another wrinkle, required settlement reporting for Defendant only identifies the MAO, not the downstream entity. Thus, either the Court would have to obtain from every MAO a list of every downstream entity to notice, which would undoubtedly be overinclusive of uninjured entities, or liability effectively would need to be determined beforehand, which creates a fail-safe issue, described more below.

Underlying this issue would be Plaintiff's control of the process. Plaintiff seeks to take the lead culling members from non-members by employing its own proprietary software. Plaintiff, however, does not provide a methodology that can

be objectively analyzed and subject to outside scrutiny.  Plaintiff's sole contribution to explaining its methodology has come in the form of a four-page declaration of one of its attorneys [DE 139-6 at 2-5].  Other courts have been troubled by similar circumstances.  *See MSP Recovery Claims, Series LLC v. Atlantic Specialty Ins. Co.*, No. 6:20-CV-553-RBD-EJK, 2021 WL 6750961, at *2 (M.D. Fla. Dec. 29, 2021) (declining to certify a class based on ascertainability, noting Plaintiff's unexplained proprietary algorithm for class determination, and stating that "the Court cannot assess Plaintiff's class determination methodology because no such methodology exists").  The Court, however, does not resolve these overinclusive issues and the intended methodology because it denies the Motion on other bases.

### 2.    Fail-Safe Class

The fail-safe class issue and its interplay with Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3) strike the fatal blow to Plaintiff's Motion.  A fail-safe is a class that only includes those who are first determined to be entitled to relief.  *Randleman v. Fidelity Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011).  Other courts have recognized issues that fail-safe classes create.  *See Kamar v. RadioShack Corp.*, 375 Fed. App'x 734, 736 (9th Cir. 2010).  Problems arise

> when the class itself is defined in a way that precludes membership unless the liability of the defendant is established. When the class is so defined, once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class. That is palpably unfair to the defendant, and is also unmanageable—for example, to whom should the class notice be sent?

*Id.* Other courts in this Circuit have recognized the insurmountable problems of fail-safe classes, but the Eleventh Circuit has not yet expressly prohibited them. *See Atlantic Specialty Ins. Co.*, 2021 WL 6750961, at *2.

The revision of the class definition, from the Complaint's version to that in the Motion, resolves the fail-safe issue. As a corollary, the revision demonstrates why the Court cannot revert to the Complaint's definition in rejecting the Motion's definition. The Motion's definition removes the phrase "for which Defendant has not reimbursed in full or part" [DE 107 at 4]. With its acknowledgment of potential fail-safe issues in the earlier definition, Plaintiff appears to have meant for that phrase to limit focus to conditional payments where reimbursement was due and unpaid [DE 136 at 12 n.1]. Such a liability determination as part of class membership would have created a fail-safe. By removing the phrase, the class now captures members who made conditional payments, without any limitation as to whether reimbursement has occurred. This change eliminates the fail-safe issue but creates others under Rule 23, as further explained below.[4]

> D.     Federal Rule of Civil Procedure 23(a)

Plaintiff's Motion fails to satisfy Rule 23(a)(1)'s numerosity requirement. In addition, the Motion's broader definition fails under 23(a)(2)'s commonality requirement. Finally, by dropping the "and/or assignees" language from its class definition and, thus, seeking to represent MAOs and downstream entities, Plaintiff

---

[4] Defendant also raises a lack of time limit on claims as an additional class definition problem. The Court does not need to address this issue because it resolves the Motion on other grounds.

encounters issues as a class representative indirectly holding by assignment an MSP Act claim, whereas all other members would hold claims directly.

1.      Numerosity

Although numerosity is a "generally low hurdle," it is, nonetheless, a hurdle. *Vega*, 564 F.3d at 1267.  Plaintiff contends that Defendant routinely fails to reimburse conditional payments.  Plaintiff, however, fails to offer any support for this conclusion beyond a claim the cited deposition does not support, and a reference to an MAO directory.

First, Plaintiff's cites deposition testimony of Steven Keefer, Sedgwick's corporate representative.  Plaintiff claims it shows that Sedgwick systematically, in contradiction to its written policies, transfers responsibility for reimbursement to an injured individual when Sedgwick enters a settlement on Defendant's behalf with that claimant.  The cited testimony simply does not support this claim.  In it, Keefer is explaining that, *during* settlement negotiations and prior to entering settlement, absent an injured claimant providing a consent form to Sedgwick, the claimant has responsibility to contact Medicare regarding what might soon be deemed a conditional payment [DE 139-2 at 53-54].  The questioning attorney seems to misunderstand – as Plaintiff does in its Motion – and reminds Keefer of post-settlement reporting obligations under the law.  Keefer responds, "Yes.  But in this case, we hadn't settled [the claim] yet" [DE 139-2 at 54].  The questioning attorney asks Keefer to confirm whether Sedgwick reports settlements to Medicare once they are completed [DE 139-2 at 54-55].  Keefer responds, "Absolutely" [DE 139-2 at 55].

19

The cited testimony, at best, might support a conclusion of a discrepancy in settlement reporting duties while a settlement is being negotiated.  That testimony, however, says nothing of whether Defendant maintains primary responsibility to reimburse conditional payments or fails to do so.

Plaintiff's other support is a cite to the Centers for Medicare & Medicaid Services MA Plan Directory's listing of 937 MAO-related entities as being those with claims against Defendant.  The MA Plan Directory makes no such claim.  It is simply a directory.

As a result, the Court is left to marshal its own evidence as to the likelihood of any number of claims against Defendant, but this is not the Court's obligation.  *Valley Drug*, 350 F.3d at 1187.  As in *Vega*, "it is tempting to assume" that there might be evidence out there of some number of claims against Defendant to satisfy the minimal numerosity requirement.  But the movant has this burden. *Id.*  And Plaintiff has failed to meet it.  The Court's "factual findings must find support in the evidence before it."  *Vega*, 564 F.3d at 1267.

Moreover, the focus of the Court's Rule 23(a)(1) inquiry should be on whether joinder of members is impracticable.  But, again, given the scant record, the Court cannot make a reasoned conclusion in this respect, either.  As a result, the Court finds Plaintiff has failed to carry its burden to satisfy Rule 23(a)(1)'s numerosity requirement.

2.      Commonality

Rule 23(a)(2)'s commonality requirement is also one with a "relatively light burden." *Vega*, 564 F.3d at 1268.  Plaintiff, however, fails to satisfy it because Plaintiff's first two proposed common questions are resolved by determining class membership, and the remaining question regarding reimbursement is not so binary, requiring resolving individualized defenses to liability.

First of all, two of three of Plaintiff's common factual questions are already class definition parameters.  Plaintiff, thus, appears to conflate class definition with the requirement under Rule 23(a)(2) and, in doing so, betrays its contention that it does not intend to define a fail-safe class.  Plaintiff cites questions of (a) whether insurance entities had "overlapping coverage," (b) whether beneficiaries entered a settlement, and (c) whether Defendant repaid Medicare liens, i.e. reimbursed the secondary payer.  Plaintiff's proposed class definition, however, is of Medicare beneficiaries who entered into settlements with a third-party insurer.  That satisfies the first two of these so-called common questions.

The remaining question, as noted above, relates to whether Defendant had a reimbursement liability to a given putative class member.  While this would certainly be a common factual question for class members, it is not "susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001).  The determination will be specific for a given putative class member, precluding Plaintiff's ability to offer "proof [that] the court can resolve the questions of law or fact in 'one stroke'." *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 693 (S.D. Fla.

2014) (citation omitted).  Plaintiff seems to mistake the commonality of process with proof.  It argues the efficiency of its data-matching system as the simple stroke, but that does not make the outcome of the question of liability or amount one the Court could resolve singularly for all or even a portion of class members.  By its very nature, Defendant's potential defenses to a given claim, as evidenced above with its affirmative defenses to R.C.'s claim, will depend on the details of the claim. Plaintiff's contention to the contrary, that the amount due a class member is easily determined by its software, assumes a fail-safe class.

As a result, while the commonality requirement is a relatively low bar, the Court is not persuaded that it could reach a class-wide determination on Plaintiff's proposed questions because they are either already part of the class definition or vary by class member.  Plaintiff's Motion does not suggest any additional question of law or fact, nor has the Court identified one.  Therefore, the Court finds that Rule 23(a)(2)'s requirement has not been met.

### 3.  Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of...the class."  Fed. R. Civ. P. 23(a)(3).  Given the above analysis, the Court finds analyzing typicality requires a string of strained assumptions that the above analysis does not support regarding whether Hygea's claim would be typical of the class.  Given the Court's rulings above, it does not reach any further determination of typicality.

4.      Adequacy

Likewise, while the parties hotly contest whether counsel would be appropriate to represent any class, given the above rulings, the Court "declines [the] invitation to explore this unnecessary fray." *See Bouton*, 322 F.R.D. at 700.

E.      Federal Rule of Civil Procedure 23(b)(3)

As noted above, Plaintiff contends that there are issues susceptible to common proof.  It further argues that individual determinations do not necessarily defeat class certification.  The Court agrees with the latter statement but, as explained above, is unable to identify common questions of law or fact.  Those that Plaintiff sets forth to support Rule 23(b)(3) are, again, examples concerning the initial determination of class membership.  Plaintiff, for example, points to whether Defendant was the primary plan in a given instance, and whether Defendant had a primary payment obligation.  Plaintiff also contends that determining waiver would be common to the class.  These determinations, however, would necessarily be made in the process of resolving class membership, given how Plaintiff has defined the class, or would be specific to a given claim.  The remaining example Plaintiff offers is whether Defendant satisfied its reimbursement obligation in a given instance. While Plaintiff details how this can be efficiently determined, that does not make it susceptible to common proof.  Instead, as consideration of Rule 23(b)(3)(A) highlights, individual class members will have a significant interest in controlling their respective claims because of the individualized nature of each claim.

In addition, given Plaintiff's experiences in this and other related cases that Defendant catalogs [DE 146 at 15-16, 19, 20], the Court is not persuaded that such individualized damages determinations would be particularly efficient and amenable to a class suit process.  While individualized issues alone would not defeat class certification, when the Court cannot identify any other substantive question of law or fact, class certification is not appropriate.

Finally, the Court is not persuaded that a class action is the superior vehicle for putative class members.  It is certainly not the only vehicle available to MAOs and downstream entities who wish to recoup on small claims.  They could contract with Plaintiff, which has demonstrated its willingness to bring such claims as an assignee on behalf of a variety of MAOs and other entities.  Therefore, it is

ORDERED that Plaintiff's Motion for Class Certification [DE 136] is DENIED.

DONE AND ORDERED in Miami, Florida, this 7th day of June, 2022.

*Patricia A. Seitz*

PATRICIA A. SEITZ
UNITED STATES SENIOR DISTRICT JUDGE